(No. 37129.—

The People of the State of Illinois, Defendant in Error, *vs.* Robert Jackson, Plaintiff in Error.

*Opinion filed September 27, 1963.*

Harvey Melinger, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Ronald Butler, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Robert Jackson, referred to herein as the defendant, together with one A. C. Harvey and one Johnnie Sinclair, were tried in the criminal court of Cook County by the court without a jury and convicted of the crime of rape. The defendant was sentenced to the penitentiary for a

term of 40 years and a writ of error has been issued to review his conviction.

The principal argument is that the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt. The victim of the assault, Hazel Morrison, testified that on August 11, 1957, at about 2:30 A.M., she and Albert Strong and Amos Flagg were walking through Jackson Park toward the lake to go fishing. There were lights along the street and also some light from boats in the harbor. As they approached a bench which was about 18 to 25 feet from the street, they saw 3 men sitting on a bench and another man standing nearby. One of the men, identified by Mrs. Morrison as Harvey, stepped in front of them with a gun in his hand and slapped Strong. Flagg struck Harvey with a flashlight and ran away but was caught by Sinclair. Sinclair then told Flagg and Strong to sit on the bench and he and the defendant and Harvey led Mrs. Morrison away. A short distance from the bench the men forced Mrs. Morrision to lie down and Sinclair forced her to submit to an act of intercourse, during which Harvey and the defendant urged Sinclair to hurry up. After the first act of intercourse was completed the defendant had intercourse with Mrs. Morrison and after he had finished, Harvey had intercourse with her. They then told Mrs. Morrison that she could go and she went to the police and reported the crime. On August 13, Mrs. Morrison went to the police station where she identified the defendant out of a line-up of 7 or 8 other men. Strong and Flagg were with her at that time and also identified the defendant. The next morning Mrs. Morrison went to the State's Attorney's office and at that time the defendant denied any knowledge of the crime and said that he had never seen Mrs. Morrison before. On August 14, Mrs. Morrison went to another police line-up and at that time she identified the defendant, Sinclair and Harvey. Strong and Flagg were then brought into the room and they like-

wise identified the 3 men. On August 15, Mrs. Morrison, Strong and Flagg went to the State's Attorney's office. Mrs. Morrison testified on cross-examination that she had told the police that the defendant had peculiar ears and when she was asked by defense counsel to look at the defendant and tell counsel what was so peculiar about the defendant's ears, she replied that they just looked peculiar to her. It was also brought out on cross-examination that at the second line-up, Flagg told Mrs. Morrison that he didn't believe Jackson was one of the men because Jackson stuttered and none of the men involved in the assault had stuttered. Mrs. Morrison testified that the defendant did stutter at the time he was questioned in the State's Attorney's office but she said that the defendant didn't talk much at the time of the attack so that she didn't know how well he talked then. In further cross-examination she testified that the defendant denied being in Jackson Park. Defense counsel asked Mrs. Morrison what Jackson had meant when he told the State's Attorney that he was there. An objection to this question was sustained but the court permitted Mrs. Morrison to give further details about the conversation. She testified that the State's Attorney asked the defendant where he was at the time in question and that the defendant had told the State's Attorney that he had first gone to see his girl friend and then went to see another lady that his mother knew and that he stayed there all night. Counsel then asked Mrs. Morrison if it was not true that when the defendant said he was there, he was not referring to Jackson Park and Mrs. Morrison replied that she couldn't say as to that.

Strong identified the defendant, Sinclair and Harvey as the parties involved in the assault. He testified that he saw the defendant and the other men on the ground with Mrs. Morrison and heard them laughing and talking. Strong also testified as to the police line-ups where he had identified the defendant and Harvey and Sinclair. He testified that the

defendant had admitted being present in the park but had stated that he took no part in the rape. On cross-examination he testified that he noticed nothing unusual about the speech of any of the men in the park, but did notice that the defendant stuttered at the time he was questioned by the State's Attorney. He testified that he thought the defendant was able to talk and was "putting on" his stuttering.

Flagg also identified the defendant, Harvey and Sinclair as the parties involved in the assault and also testified that he had identified them in the line-ups. He was asked on cross-examination whether he had heard the defendant talking in the park and he testified that he heard Harvey and Sinclair talking but didn't hear the defendant speak. He also testified on cross-examination that he had told the State's Attorney that the defendant did not rob him but that he was with the other men in the park.

Officer Thomas O'Shea testified that Mrs. Morrison, Flagg and Strong had all identified the defendant at the line-ups. He testified on cross-examination that the defendant had always denied any knowledge of the occurrence and that he never heard the defendant admit that he was in the park.

For the defense, the defendant testified that he was arrested on August 12 and questioned about another offense. He was then taken to the line-up where he was identified by Mrs. Morrison, Flagg and Strong. When he was brought before the State's Attorney he discovered for the first time that he was being held for the rape of Mrs. Morrison. He denied any knowledge of the occurrence and told the State's Attorney that he had been with a friend of his mother's until about 3 or 4 o'clock in the morning on the morning in question. After he left the State's Attorney's office he was returned to the central police quarters where he stayed for about 2 hours and was then taken to another jail in a police wagon. Defendant testified that Harvey and Sinclair were in the wagon with him. Prior to that time he had

never seen Sinclair before and did not know Harvey's name. He told Harvey and Sinclair that he was accused of rape and robbery and that he knew nothing about the crime. Harvey asked the defendant what Mrs. Morrison looked like and after the defendant had described her, Harvey said he knew who had committed the crime. Following this conversation the defendant, Harvey and Sinclair, were identified in the second line-up. After this line-up the defendant asked Harvey who had committed the crime and Harvey told him that it was 3 boys named Rochelle, Roy and Obie. He asked Harvey whether he was going to tell the police who had committed the crime and Harvey assured him that he would. The next time the defendant saw Harvey and Sinclair was when they appeared in the criminal court and the defendant again asked Harvey to tell the judge who had committed the crime and Harvey again assured him that he would do so. On several later occasions Harvey told the defendant that he would tell the police or the judge who had committed the crime.

Officer O'Shea testified for the defense that the defendant had told him that he was visiting a friend at the time of the crime.

Harvey denied having any part in the crime and testified that 3 boys known as Rochelle, Roy and Obie had told him that they had committed the crime. He testified that he told the defendant that he knew who had committed the crime and that he had told the defendant that he would tell the judge who the guilty parties were.

Sinclair denied taking part in the crime and testified that Harvey had told him and the defendant that he knew who had committed the crime. It was brought out that Sinclair had given his attorney the name of Obie Collier and requested that he be subpoened as a witness. It was stated for the record that the subpoena had not been served since Obie had left the State.

Vilma Williams testified that the defendant had come to

her house at about 10 o'clock on the night of August 10 and had stayed until about 2 o'clock in the morning of the 11th.

At the conclusion of the evidence the court entered a finding of guilty as to Harvey and Sinclair and stated that he wanted to study his notes carefully before he made a finding as to the defendant. The matter was continued for several days and the court then announced that he had very carefully read the evidence which had been transcribed and that the more he read the evidence the more he became convinced. The court stated that he had never seen a witness who gave more clear and convincing evidence than Mrs. Morrison and also stated that the same might be said as to Flagg and Strong, who had undergone vigorous cross-examination and had stuck by their stories. He then entered a finding of guilty as to the defendant.

The defendant does not dispute the fact that Mrs. Morrison was raped. He contends, however, that the evidence failed to establish that he was one of the parties involved in the offense and argues that the fact that he stuttered while was being questioned and that none of the parties involved in the assault stuttered, creates a reasonable doubt as to his guilt. It is also urged that the identification testimony is entitled to little weight because of the lighting conditions in the park; that certain discrepancies in the testimony of the eye witnesses makes their testimony worthless; and that the alibi testimony creates a reasonable doubt as to the defendant's guilt. Similar arguments were advanced in the recent cases of *People* v. *Evans,* 25 Ill.2d 194, and *People* v. *Mack,* 25 Ill.2d 416. In the *Evans* case we pointed out that the defendant's argument that the identification testimony was doubtful presented only a question of the credibility of the witnesses, which was a matter for the trier of the facts to determine, and in the *Mack* case we held that positive identification by one witness who had ample opportunity for observation may be sufficient to support a conviction. In the present case the defendant was positively identified by not

only the victim of the assault but by Strong and Flagg. The defendant's argument with respect to the lighting conditions, his speech defect, and the discrepancies in the testimony of the witnesses, are, in essence, an attempt to cast doubt upon the credibility of the witnesses. The trial judge specifically stated that he found the testimony of the eyewitnesses to be clear and convincing. This testimony was sufficient to establish the defendant's guilt beyond a reasonable doubt.

Other alleged errors concern various rulings on evidence. The first contention is that the court erred in failing to strike an unresponsive answer made by Mrs. Morrison. During her cross-examination concerning the events in the State's Attorney's office she was asked whether, after that interview she went home. She replied: "He admitted he was the one there. He said but he didn't stutter. He seemed to be nervous and he went to pieces. He admitted to the story how he was the one." Defense counsel moved that this be stricken on the ground that there was no question before the witness but the court ruled that the answer might stand. We agree with defense counsel that this answer was unresponsive to the question and the answer should have been stricken. However, Mrs. Morrison had previously testified without objection that the defendant had said that he was there and she was thereafter permitted to give the entire conversation, from which it appeared that the defendant was not there and went on to relate that he was at the home of his friend until early in the morning. In view of these facts and the fact that this case was tried by the court without a jury, we are of the opinion that the erroneous ruling of the trial judge was not so prejudicial as to require reversal.

At another point in the cross-examination of Mrs. Morrison, she was asked whether the defendant had at all times said that he had never seen her. She replied, "Yes" and the prosecutor objected on the ground that that was not the

testimony. The court sustained the objection. On re-cross-examination, the same inquiry was made and the prosecutor again objected on the ground that the question had been asked and answered. The court sustained the objection and the witness did not answer. In view of the fact that the witness did answer the first question before the prosecutor's objection and also in view of the fact that she had previously testified that the defendant had denied being in the park, we find no prejudicial error in the court's rulings.

Finally, the defendant contends that it was prejudicial error for the court to permit Mrs. Morrison to repeat her identification of the defendant. She testified during the course of her examination that the defendant and his co-defendants were the parties who had assaulted her. At the conclusion of her testimony she was asked whether she saw in the courtroom the men who had attacked her and she again identified the defendant and his co-defendants. In our opinion the repetition of this testimony was not prejudicial to the defendant, particularly in view of the fact that the case was tried before the court without a jury.

In our opinion the defendant received a fair trial and his guilt was established beyond a reasonable doubt. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*