**People of the State of Illinois, Appellee, v. Horace Ruth, Appellant.**

**Gen. No. 52,016.**

First District, Fourth Division.

July 2, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Joel M. Flaum, and James B. Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Horace Ruth, was charged with the crime of armed robbery. After a jury trial, he was found guilty and sentenced to a term of 3 to 7 years in the penitentiary. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt, and that the trial court erred in refusing instructions tendered by defense.

Charles Cathey testified that on January 8, 1966, at about 11:15 p. m., accompanied by his passenger, James Wooten, he drove his 1965 Chevrolet into a parking lot at 5266 South Federal, Chicago. The parking lot had lights; and his headlights and interior lights were on. As he pulled to a stop, a man whom he identified as defendant pulled the door open and held a gun to his face. He identified the gun, and it was introduced into evidence. He was ordered out of the car, and defendant took $15 cash from him. At the same time defendant was robbing the witness, another man holding a gun pulled open the front door on the passenger's side and robbed Wooten. Defendant then ordered the two complainants to run. The witness backed away, facing the robbers. The two robbers drove away in complainant's automobile. The witness also testified that defendant was wearing a black leather trench coat and a leather cap; that he was dark-complexioned with big lips; was approximately 5' 10", weighed 145 pounds, and was about 19 years old. Two days after the robbery he went to the police station and viewed about 10 photographs. One picture was of the defendant. He next saw the defendant on January 23, 1966, at the police station. Defendant was in a

lineup of 5 men, and the witness identified him. Wooten was with him at the time.

He saw the man who held up Wooten about 2:30 a. m. on the morning following the robbery. That person, Milliard Allen (not involved in this appeal), was in a police car, and the witness's automobile was also there. He selected the person who held the gun to Wooten out of a lineup at the police station on the same morning after the occurrence. He identified the man on the other side of the car as being light brownskinned, about five feet tall, weighing about 135 pounds, and about 15 years old. He did not have a mustache or glasses. He described the two robbers to the police about 15 minutes after the incident.

James Wooten, the passenger, testified substantially to the same facts as Cathey. He identified defendant in court as one of the two men who robbed them. Both robbers had guns, and took $25 cash and his identification papers from him. When the robbers came to the car, they ordered Cathey and him out of the car, searched the car and drove off with it. The person on his side of the car was about five feet tall with a light complexion, while the man on Cathey's side was of medium height and dark complexion. Both were wearing black leather coats and black hats. Two days after the occurrence, he looked at 2 or 3 photographs. One was of defendant. On January 23, 1966, at a police lineup, he identified defendant as one of the robbers. There were five men including defendant, in the lineup.

Officer Patrick Moriarty of the Chicago Police Department testified that at about 11:45 p. m. on January 8, 1966, he was in a patrol car with Officer Ray Davis. They were notified that a 1965 Chevrolet had been stolen in a robbery. At about 1:15 a. m., he saw a car pull out of an alley with no license plates, and without headlights or taillights. He and Officer Davis pursued the car into a gas station on the southwest corner of 59th

31

and State, Chicago. The driver jumped out of the car and escaped, and the witness apprehended the other man, Milliard Allen. He found a gun next to Allen, who was trying to hide in the car. Subsequently Cathey identified the automobile as his.

Officer Ray Davis of the Chicago Police Department testified that as he and Moriarty pursued the car into the gas station, he told Moriarty to catch the person on the passenger side. He tried unsuccessfully to apprehend the driver, who fled from the scene on foot. As he ran, the witness had an opportunity to observe the driver and described him as being about six feet tall with dark skin. The man who fled the scene resembled the defendant.

It was stipulated that Officer Patrick Henry of the Chicago Police Department would testify that he removed the rearview mirror of a white Chevrolet, dusted the same with fingerprint powder and marked a latent print for identification. It was also stipulated that Neil Joslyn, a fingerprint examiner, was an expert on fingerprint identification; that he developed a negative of the picture taken by Officer Henry; that he compared the picture with the fingerprint of defendant; and that the latent print proved to be that of defendant.

Officer Roy Carney, a detective of the Chicago Police Department, testified that after he learned the results of the fingerprint test, he arrested defendant. Defendant at first denied he was Horace Ruth.

Donald Carter was called as a court's witness. He testified that he presently was in the Illinois Industrial School for boys at Sheridan, Illinois. On March 5, 1966, he went to defense counsel's office in the company of defendant's parents and gave a written statement to the attorney. That statement indicated and he testified at trial that he and Allen committed the robbery in question. They saw two men sitting in the car, one in front and another in the back seat. Allen had the only gun, and opened the driv-

er's door, while he searched the man who got out of the back seat. They drove off in the car, and about an hour later they saw defendant. He told defendant that it was his uncle's car and that he could have a ride. He stopped to get some barbecue and the defendant left to go home. He and Allen drove around, and he parked the car in an alley while he again went to get some barbecue. When he returned, he saw the car in a filling station. The policeman beckoned, and he fled. As he ran, the policeman was shooting at him. He hopped a wall and escaped. Although he knew defendant for 4 years, he would not lie to help him. On March 12, 1966, the police took him to the police station. There in the presence of his mother, he gave a statement to the police that the story he had given defendant's attorney was phony. At trial in the instant case he testified that it was not a phony story, and that he had told the police that it was phony because the police promised that he would be cleared and not returned to the Illinois Youth Commission. Prior to trial, he also had told police that he and defendant had committed the crime. He testified that this statement also was untrue, and that only his trial testimony was true.

Prior to Carter's testimony as a court's witness, the State recalled Cathey and Wooten. Both men were asked to observe Carter who was then in the courtroom. Both witnesses stated that they had never seen Carter before.

Defendant first contends that he was not proved guilty beyond a reasonable doubt because the identification was uncertain and doubtful, and since another person admitted his guilt to the crime.

■ ■ The testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict, even though the testimony is contradicted. People v. Cox, 22 Ill2d 534, 177 NE2d 211 (1961). And the adequacy of the identification raises a question of the credibility of the witnesses which is a matter for the deter-

mination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963); People v. Evans, 25 Ill2d 194, 184 NE 2d 836 (1962).

In this case, there was a positive identification of the defendant by two eyewitnesses. Both witnesses had an ample opportunity to observe the apparently undisguised robbers for some time in a lighted parking area, and both witnesses gave an accurate description of defendant. Cathey was just inches away from the man whom he identified as defendant while the latter pulled open the car door, directed the victim to get out of the car at gunpoint, and took his cash. Additionally, Cathey testified that he continued to face defendant as he was directed to the rear of the car, and when ordered to run, he backed away, continuing to observe his assailant. Moreover, the victim's identification of defendant is strengthened by the competent and admissible testimony of the police officer that the man whom he pursued resembled the defendant. There was also corroboration of the eyewitness testimony by virtue of the discovery of defendant's fingerprint on the rear view mirror of the stolen car.

We are unable to reach defendant's conclusion that the victims were unable to identify defendant as their robber from looking at the photographs. The only testimony in the record is that each victim viewed photographs, and that one was of the defendant. While both victims viewed the photographs together and went to the police station lineup together, there is no showing that the identifications were products of suggestion and not independently made.

Defendant cites People v. Cullotta, 32 Ill2d 502, 207 NE2d 444 (1965) in support of his proposition that the identification in the case at bar was doubtful and un-

34

certain. In that case, defendant was identified by two policemen who had a fleeting glance at him in a store as they drove by in their squad car. Such an identification is distinguishable from that in the instant case where two witnesses had adequate opportunity to observe defendant during the robbery.

■■ The credibility of a witness is for the jury to decide. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809 (1956). In the instant case, the triers of fact obviously did not believe Carter's confession of guilt, and rejected his testimony. We find that such a decision by the jury was supported by the evidence. Carter's testimony at trial that it was he, and not defendant, who participated in the robbery, was impeached by his previous inconsistent statement which he had given to the police. While he testified that he gave such a statement to the police in return for a promise that he would not be sent back to the Illinois Youth Commission, the record reveals that he did give the statement, and was accompanied by his mother at the time. Moreover, his version of the robbery was contradicted by the victims in several important respects; he testified that the passenger was in the back seat, while both victims testified that the passenger was in the front seat; he testified that Allen had the only gun, whereas the victims testified that each robber had a gun; and he testified that Allen held up the driver, while the victims testified that Allen held up the passenger.

■ We find that the identification was certain; that the jury properly discredited Carter's testimony; and that defendant was proved guilty beyond a reasonable doubt.

Defendant next argues that the court committed prejudicial error in refusing certain instructions tendered by defendant. Defendant first tendered Instruction No. 1 which reads as follows:

"The court instructs the jury, so far as the identity of the defendant is concerned, that if they believe, from the evidence and the circumstances proved, that there is reasonable doubt whether the witness might not be mistaken as to his identity, then the jury would not be authorized to convict the prisoner."

When the court refused the above instruction, defendant tendered Instruction No. 2, which reads as follows:

"The possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must consider these factors passing upon the credibility that you attach to the witness's testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness's identification of the defendant."

The court also refused the above instruction. The court, over the objection of defendant, gave State's Instruction No. 6. It reads as follows:

"The Court instructs the jury that in determining whether or not the defendant has been identified as the person who committed the offense charged in the indictment, if any such offense was committed, you must consider all the testimony in the case, both that for the prosecution and that for the defendant; considering the means of identification; the circumstances under which he was identified; the opportunity for identifying the said defendant; the description of his apparel as stated by the witnesses; and the probabilities or improbabilities that it was the defendant—and if after so judging and weighing the testimony you are satisfied beyond all

reasonable doubt that the defendant has been correctly identified as the person who committed the offense as charged in the indictment, it is your duty to find the defendant guilty."

■ In refusing defendant's two tendered instructions concerning identification, the trial judge stated that the above State's instruction, along with the instructions on credibility and presumption of innocence, adequately covered the subject of identification. We agree with the trial judge that the giving of either of defendant's instructions would be unnecessarily repetitive, and that the State's instruction adequately sets forth the law on identification. We do not agree with defendant that the failure of the given instruction to mention the possibility of human error or mistake constituted reversible error. Nor do we find that the differences in phrasing and nuances between the given instruction and defendant's tendered instructions were so significant as to have been prejudicial to defendant. We hold that the instruction given sets forth the law as to identification with sufficient accuracy. We also assume that in the future, as per committee recommendations, no instruction will be given on the circumstances of identification (See IPI—Criminal, § 3.15), but that the subject will be covered by IPI—Criminal Instruction No. 1.02 concerning credibility of witnesses, thus obviating the objection in this case.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.