**People of the State of Illinois, Plaintiff-Appellee, v. Jack Howard, Jr., Defendant-Appellant.**

**Gen. No. 53,720.**

First District, Fourth Division.

February 11, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Saul H. Brauner, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Holum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

The defendant was convicted, after a jury trial, of the crimes of deviate sexual assault and robbery. Judgment was entered and he was sentenced to a term of twelve to fourteen years for deviate sexual assault and fifteen to twenty years for robbery, the sentences to run concurrently. On appeal defendant contends that he was not proven guilty beyond a reasonable doubt because his alibi was corroborated by work records and his identification was vague and uncertain.

Testimony of Jacqueline Flynn, the complaining witness:

On January 26, 1967, she lived at 719 West 17th Place. She left her home at approximately 7:55 a. m. to go to work, and as she was walking east on 17th Place she noticed a man across the street walking west. No one else was on the street. She saw the man cross the street. As she kept walking she took a quick look behind her and suddenly there was a hand over her mouth. She screamed and he told her, "If you scream you MF, I'll kill you." She said, "Take my money," or "Don't hurt me!" She held out her purse and he took it. She had $5 in her wallet. He then took her by the shoulders and across a yard underneath a staircase. She had a good look at his face when she held out her purse. She was only three or four feet from him. She wears glasses and she had them on when the crime occurred. It was bright outside when she left for work. The man was a foot and a half from her while underneath the staircase. She then described the deviate sexual assault.

During the assault she noticed a brilliant gold ring on her assailant's left little finger. During direct examination the defendant held up his left hand and she looked at the ring he was wearing. It was similar to the one he was wearing on January 27, 1967, in its outside shape, and it also had a rose in the center. It was worn on the same left hand little finger.

After the assault and robbery she ran to a convent across the street. She grabbed some children who were right outside the convent and asked them to help her. They took her to the door where she rang the bell and was let in by a sister. It was about fifteen minutes from the time she left home until she ran to the convent.

At 8:30 a. m. the police came to the convent. She described her assailant as a male Negro, about five-nine or five-ten in height, 165 to 170 pounds in weight, and twenty-three to twenty-five years old. He had on a three-quarter length dark gray coat, black wash pants which were turning gray, and the gold ring.

She was shown photos of suspects the Saturday after the day she was attacked. She did not see anyone that looked like the man who attacked her.

On February 21, 1967, she was brought to the police station where she viewed a lineup of five Negro men. They were all about the same height and build and all wore work clothes. She identified the defendant as her assailant. She did not see him wearing a gold ring as she was not looking for it.

Testimony of William Buegel, called by the State:

He did not know about the assault on the complaining witness but he had been given the defendant's description by numerous persons. He saw the defendant at 8:05 a. m., on February 21, 1967, at the corner of 18th Street and Racine and went for the police.

Testimony of Frank Argentine, called by the State:

He is a police officer. On February 21, 1967, William Buegel and he had the occasion to see the defendant and placed him under arrest. On his police report he wrote that the defendant was five foot nine in height, weighed 185 pounds and was eighteen years old.

It was stipulated that the defendant is currently eighteen years old.

Testimony of Jack Howard, Jr., the defendant:

He lives at 1427 South Trumbull. He is eighteen years old and at the time of his arrest he was seventeen years old. On January 26, 1967, he was employed by Polo Food Company at 117 South Water Street. He worked from 8:00 a. m. to 4:30 p. m., Monday through Friday.

On January 26, 1967, he got to work about 7:55 a. m. and punched in for work at two or three minutes after eight. He always takes the bus from his home to 18th and Racine and walks north on Racine to 14th Place and then turns right (east) and walks two blocks to the food company.

When he enters the front door of the company he has to show his identification card to a security guard. He then goes to the locker room, changes clothes and goes upstairs to punch the time clock. It takes about five or six minutes from entering the building, getting a fresh coat and hat, changing clothes and punching the clock.

He denied that he committed either the deviate sexual assault or the robbery. He never saw the complaining witness on January 26, 1967. The first time he ever saw her was on February 21, 1967, at the Maxwell Police Station when he participated in a lineup.

He is five feet eleven and weighs about 190 pounds. He got to work about 7:55 a. m. on January 26, 1967. He was arrested on February 21, 1967. He was about five blocks from work at the time of his arrest. It would take him about ten minutes to walk the five blocks to work. He did not work on January 27, 1967. He left work on January 26, 1967, at 1:00 or 1:30 p. m.

Testimony of William J. Robinson, called by the defense:

He is the personnel director for the South Water Market Polo Food Company. In response to a subpoena he brought the personnel records of the defendant. On January 26, 1967, the defendant punched in at approxi-

91

mately 8:06 a. m. "I say approximately because of the way our time clock works." The clock punches every six-tenths of an hour. If the time card says 8.1 it would be any time for the period of six minutes after eight to eleven minutes and fifty-nine seconds after eight.

An employee receives a fresh hat and coat for work only once a week, and on Thursday, January 26, 1967, they would already have their coat and hat. An employee would keep the same hat and coat unless it was so torn that a foreman would have to get him a new one.

If a man were in a hurry the whole procedure of changing clothes and punching in would not take very long. A man in a hurry could punch his time card first, before putting on his hat and coat. It is possible for some other employee to have punched the defendant's time card. The defendant did not work on January 27, 1967, but his time card was punched for that date and then crossed out and initialled by the superintendent. The defendant's time card for January 26, 1967, showed that someone punched it out at approximately 10:15 a. m.

In his opinion it would be "rather difficult" for a person who left the 700 block of 17th Place at four or five minutes after eight to get to the plant and punch his time card at 8.1 (8:06 to 8:12 a. m.).

He had no personal knowledge when the defendant punched in on January 26, 1967, since he was not employed at Polo Foods on that date. To the best of his knowledge the time clocks are accurate but he did not know the condition of the time clocks on January 26, 1967.

Opinion

Defendant contends that he was not proven guilty beyond a reasonable doubt. He argues that his alibi evidence was corroborated by his work records for January 26, 1967. The complaining witness testified that the crime took place around 7:55 a. m. and about fifteen

minutes elapsed from the time she left her home until she came to the convent. The defendant testified that on January 26, 1967, he arrived at Polo Foods, approximately five blocks from where the assault occurred, at about five minutes to eight and punched his time card at 8:03 a. m. In an attempt to corroborate this testimony the defendant offered the testimony of William Robinson. However, Mr. Robinson testified that the defendant punched in at 8.1, or between 8:06 and 8:12 a. m.

In People v. Silvia, 389 Ill 346, 353, 59 NE2d 821, the court stated:

A reasonable doubt is not raised merely because the evidence is conflicting or because there is some evidence of an alibi. (People v. Bote, 379 Ill 245; People v. Katsovitz, 363 Ill 187.) When the evidence offered to establish an alibi, even though taken to be true, does not cover the entire period when the crime was alleged to have been perpetrated, it is not convincing. (People v. Bote, 379 Ill 245; People v. Mitchell, 368 Ill 399; People v. Schladweiler, 315 Ill 553.) The reasonable doubt as to the guilt of defendant arising out of the evidence of a defense of alibi must come from the fact that the evidence tends to show the impossibility or improbability of the presence of defendant at the time of the commission of the crime.

While the testimony of the defendant and Mr. Robinson taken together appears to cover the entire period of the crime, the jury could reasonably have found otherwise. The complaining witness testified "it was about 15 minutes from the time I left the house that I came to the convent." After her assailant fled, she pulled up her undergarments, ran across the street and grabbed some children who were outside the convent and asked for help. They took her to the door and she rang the bell and was let in by a sister. From this evidence the

93

jury could reasonably infer that the assault and robbery took less than fifteen minutes. The jury could find that the defendant did not arrive at work on January 26, 1967, at 7:55 a. m. and punch in at 8:03 a. m. but rather fled the scene of this crime several minutes after eight and punched in at 8:11 a. m. which would still be within the range of the register's 8.1. The defendant testified that he was capable of walking a five-block distance in ten minutes, and the jury could also find that he was capable of traversing this same distance within a much shorter time period if he had just committed an assault and robbery. Therefore, the defendant's evidence, if disbelieved by the jury (as it was), does not cover the entire period of the crime and does not show the improbability or impossibility of his presence at the scene of the crime.

■ We would also note that the testimony of the defendant and that of his own witness, Mr. Robinson, is conflicting. The defendant testified that he punched in on January 26, 1967, at 8:03 a. m. but his time card registered 8.1, or between 8:06 and 8:12 a. m. The defendant also testified that he left work at 1:00 or 1:30 p. m. but his time card indicated that his card was punched out at 10:15 a. m. Furthermore, the defendant testified that he had to wait in line to receive a fresh hat and coat, but Mr. Robinson testified that an employee would not have to wait in line since he would have received a fresh hat and coat earlier in the week. Also, contrary to the defendant's testimony, Mr. Robinson stated that if a man was in a hurry he could punch the time clock first and then change clothes. Finally, the defendant testified that he did not work on January 27, 1967, but his time card was punched in for that day and later was crossed out and initialled by the superintendent. This fact may well have been coupled by the jury with Robinson's testimony that it would have been possible for someone else to have punched in defendant's time card for the morning of January 26.

94

■ The credibility of witnesses and the weight to be given their testimony are for the jury to decide. The verdict of a jury will not be disturbed unless it is clearly contrary to the weight of the evidence or is so unsatisfactory as to cause a reasonable doubt of guilt. People v. Tribbett, 41 Ill2d 267, 242 NE2d 249, and People v. Peto, 38 Ill2d 45, 230 NE2d 236. We find that the decision by the jury was supported by the evidence and was not so unsatisfactory as to cause a reasonable doubt of guilt.

The defendant also argues that his identification was vague and uncertain. He cites People v. Cullotta, 32 Ill2d 502, 207 NE2d 444, in support of this claim. In Cullotta the defendant was identified by two policemen who had but a fleeting glance of him at a store as they drove by in their squad cars. In the instant case, however, the complaining witness had an adequate opportunity to observe her assailant. She testified that she had a good look at his face since it was a bright day; that she was about three or four feet from him when she gave him her purse; that she was wearing her glasses when the incident took place; that she observed the defendant throughout the entire assault since she was only eighteen inches from him under the staircase; and that the defendant was wearing a brilliant gold ring with a rose in the center on his left little finger. In court she testified that when the defendant held up his left hand he had a gold ring on his left little finger which looked "similar" in its "outside shape" to the one he was wearing when she was assaulted and that it had a rose in its center.

The complaining witness described the defendant to police as a male Negro, about five foot nine or ten, weighing 165 to 170 pounds, approximately twenty-three to twenty-five years old. In People v. Ruth, 113 Ill App2d 28, 33, 251 NE2d 744, this court stated:

95

The testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict, even though the testimony is contradicted. People v. Cox, 22 Ill2d 534, 177 NE2d 211 (1961). And the adequacy of the identification raises a question of the credibility of the witnesses which is a matter for the determination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963) ; People v. Evans, 25 Ill2d 194, 184 NE2d 836 (1962).

█ Even though there were minor discrepancies between the complaining witness' physical identification of the defendant and his actual weight, height and age, the jury had the opportunity to weigh the complaining witness' description with defendant's actual physical characteristics as he sat in the courtroom. We find that the identification evidence in this record is clearly sufficient to support the jury's finding of guilt beyond a reasonable doubt.

The judgment is affirmed.

Affirmed.

ENGLISH and LEIGHTON, JJ., concur.