**People of the State of Illinois, Plaintiff-Appellee, v. Edward Nelson, Defendant-Appellant.**

**Gen. No. 52,873.**

First District, Fourth Division.

July 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Paul Bradley and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Scott Cisney, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was convicted after a jury trial of the offense of armed robbery. Judgment was entered and he was sentenced to a term of forty to eighty years. Defendant raises three points on appeal: (1) he was not proven guilty beyond a reasonable doubt; (2) the prosecution engaged in improper closing argument; and (3) his sentence was excessive.

Testimony of Herbert Goldberg, complaining witness, for the State:

He is the manager of the Time Car Wash located at 3122 West Touhy Avenue in Chicago. On May 2, 1966, he arrived at the car wash at 7:10 a. m. As he walked down the customer walkway, he was accosted by a man who came up behind him and grabbed him by the back of the neck. As he turned around he saw the man had a small caliber revolver which the man stuck to his temple. The gun was cocked. The man was wearing a towel mask with two burnt holes in it. As he looked around the man said, "Don't turn around." The man took him by the back of the coat over to the cashier's cage in front of the safe. He failed to open the safe several times and each time he failed his assailant hit him on the right side of the face. This occurred four or five times. He started to bleed and "everything got very messy." His assailant finally pulled

the combination card out of his hand and said, "You don't need this." As he tried to open the safe a few more times his assailant told him, "I'm going to shoot you anyway."

After he opened the safe the defendant said, "Get away" and took $1,100 in currency and several Standard Oil Credit Cards. Defendant then took him to a storeroom, slammed the door and told him to "Stay in there." After he freed himself, he noticed that his car was missing and that a recently replaced window had been broken out and had fallen into the car wash. When the defendant struck him on the cheek, blood might have gotten on the defendant's shoes or clothing. He definitely recognized the voice as that of Edward Nelson, the defendant. He was positive that the man who robbed him was the defendant. The defendant was an employee of his for three months. He characterized the defendant's voice as a quiet monotone with a mumble. The voice he heard from behind the towel mask was the defendant's. Defendant's voice was not similar in character to most Negro voices. He had had many conversations before with the defendant.

He also recognized his assailant as being the defendant because of his unusual style of walk, which he described as very athletic. It was a loose, strutting walk which was not common. It was unique and very noticeable to him. He had never seen anyone else walk in the same manner. If he saw a thousand people there would not be another person who walked like the defendant. He had commented to the defendant about his style of walk many times.

When the police arrived, he described his assailant as six feet tall, 175 pounds, wearing a light gray coverall, a hat, gloves, and a white towel over his face as a mask. He told the police during the morning that he thought his assailant was Edward Nelson.

241

He knew that the defendant had a prior criminal record two months before the armed robbery, but he still continued to employ him. He did not know what specific crimes the defendant had committed. He has hired men with criminal records to work at the car wash.

He has a speech disorder and he has attended the School of Speech at Northwestern University, as well as a speech school in New York for his own improvement.

Testimony of Herman Novick, for the State:

He is a police officer with the Chicago Police Department. On May 2, 1966, at 7:30 a. m., he received a call of a robbery at 3122 West Touhy. When he first arrived, he saw the manager of the car wash holding his cheek which was swelling and had abrasions. He spoke to Mr. Goldberg, who told him that he had been struck by a man with a gun. Goldberg described his assailant as a male, possibly Negro, about six feet tall, weighing 165 pounds. His assailant was wearing a towel with burnt holes in it over his head. Mr. Goldberg acted very nervous and he did not mention Edward Nelson's name during this conversation which lasted about forty-five minutes.

Upon an inspection of the car wash, he noticed that a newly puttied window had been broken. There were smears of putty on the window sill. He also found a white towel with two burnt holes in it on the floor near the exit of the car wash. He turned the towel over to a police evidence technician.

He had another conversation with Mr. Goldberg after Mr. Goldberg was taken to the hospital.

Testimony of William Higgins, for the State:

He is a police officer with the Chicago Police Department. On May 2, 1966, at 8:45 a. m., he went to the Bethesda Hospital to interview Mr. Goldberg. Mr.

Goldberg told him that he thought the man who robbed him sounded like Edward Nelson, but he was not sure. After the interview he proceeded to 3122 West Touhy. Upon an inspection of the premises he found a broken window with glass on the sill and inside on the drive used in the car wash. The putty used to seal the window was fresh and pliable. He also inspected the cashier's cage, where he found what appeared to be bloodstains on the wall and floor.

He had a conversation with a Mr. Stone at the car wash and obtained the address of Edward Nelson from him. En route to this address he received a call to return to the car wash. When he returned, he observed a man who fit the description of Edward Nelson. He explained to Nelson that there had been a charge made against him and he asked Nelson if he would voluntarily accompany him to the police station. The defendant agreed to go with him.

As the defendant was changing his clothes, he noticed several whitish, chalky color stains on the front of the defendant's pants and shirt. In his opinion, these stains were of the same color as the putty on the window. There were stains on the pants from the waist to the knees and on the shirt close to the waist. There were also stains on the sole of one of the defendant's shoes. At this time he placed the defendant under arrest and packaged the pants and shirt in a bag for the crime laboratory.

At the police station he noticed that there were red stains on defendant's handkerchief and on his topcoat. They appeared to be bloodstains. He sent these articles to the crime laboratory.

Testimony of Peter Heinrich, for the State:

He is a police evidence technician with the Chicago Police Department. On May 2, 1966, he received an assignment to make an investigation of the premises

located at 3122 West Touhy. He photographed the entire scene and gathered glass standards from the floor of the car wash by the broken window. He also gathered fresh putty from the window and the white towel mask. The broken window was forty-eight inches or chest height off of the ground.

Testimony of Arthur Paholke, for the State:

He is a technician with the Chicago Police Department's Crime Laboratory. In his opinion, entry into the car wash was through a window on the far northwest corner of the building which had been broken.

Testimony of Marian Caporusso, for the State:

She is a microanalyst for the Chicago Police Department. She examined and tested the towel mask and the handkerchiefs and topcoat of the defendant. She found the reddish-brown stains to be human blood. A sample of the blood taken from the floor of the scene of the robbery was contaminated, which precluded an accurate determination of the blood group. There is no accurate method to determine the age of a bloodstain in a dry condition. She did not know if the blood on the articles of clothing was Mr. Goldberg's or the defendant's.

Testimony of Joseph Zak, for the State:

He was formerly a police chemist with the Chicago Police Department's Crime Laboratory. Upon receiving the physical evidence of the glass standards, defendant's clothes, and the putty samples, he examined and tested them. He vacuumed the defendant's trousers and shirt and found that they contained glass particles and putty. He then conducted an examination with regard to the optical properties and refractive index of the glass. In his opinion, the glass particles from the clothes and the glass standards taken from the window indicated a common origin, since the refractive index is a unique property which can be measured accurately. The putty taken

from the smudges on the pants was similar in chemical properties to the putty submitted from the window sill.

The defendant introduced no evidence in his own behalf and his motion for a directed verdict was denied.

Opinion

Defendant contends that he was not proven guilty beyond a reasonable doubt. He argues that his identification by voice and walk was vague, doubtful and uncertain and that the introduction of the scientific evidence cannot be considered as corroborative of the commission of the robbery. In People v. Finney, 88 Ill App 2d 204, 208, 232 NE2d 247, the court in discussing the propriety of voice identification testimony stated:

> It has been held by both the Appellate Court and the Supreme Court that a defendant may properly be identified by his voice. Also see 2 Wigmore, Evidence (3rd ed) § 660; 1 Wharton, Criminal Evidence (12th ed) § 183. In Ogden v. People, 134 Ill 599, 25 NE 755, the court said at page 601:
>
>> "The statement by the witnesses for the prosecution of a fact which they ascertained through the sense of hearing was not the statement of mere matter of opinion, but the statement of a conclusion reached directly and primarily from an operation of the sense of hearing. A witness can learn and know facts by and through the exercise of his perceptive faculties,—his five senses,—and such facts he may state. (City of Aurora v. Hillman, 90 Ill 61.) It was a question of fact for the determination of the jury whether or not the testimony in question sufficiently established the matter of identification, . . . ."
>
> In People v. Barry, 371 Ill 463, 21 NE2d 561, it was held that the manner of identifying a defend-

245

ant goes only to the weight of the identification evidence, and People v. Nichols, 378 Ill 487, 38 NE 2d 766, is in accord. The same rule is laid down in People v. Thompson, 406 Ill 555, 94 NE2d 349. In the instant case the identification of the defendant by his voice was proper.

■ In the instant case, Mr. Goldberg heard the defendant speak several times in the course of the robbery and he definitely recognized the voice as that of the defendant. He had hired the defendant three months prior to the robbery and they had had many conversations during this period of time. Mr. Goldberg fully described the defendant's voice and noted that his assailant's voice was that of the defendant. We find that the identification of the defendant by his voice was proper.

■ In addition to the voice identification, Mr. Goldberg thoroughly described the defendant's walk. He testified that he had never seen anyone walk in exactly the same manner, and that his assailant had the same walk as one of his employees, Edward Nelson, the defendant. As the defendant's employer for three months, Mr. Goldberg had ample opportunity to notice and observe the defendant's characteristic walk and had on several occasions commented about it. Defendant argues that Mr. Goldberg had no opportunity to observe his assailant's walk during the robbery since the assailant was behind him holding him by the back of the neck. However, we believe that the jury could reasonably infer that from the walking which took place during the robbery Mr. Goldberg had an opportunity to notice and observe his assailant's walk. This was one more factor for the determination of the jury as to the sufficiency of defendant's identification.

■ We also note that Mr. Goldberg described his assailant as six feet tall, 165 to 175 pounds, wearing a

246

light gray coverall, a hat, gloves, and a white towel over his face for a mask. Furthermore, he told the police during the morning that he thought his assailant was Edward Nelson, the defendant. The fact that he did not tell this to the first policeman who questioned him was merely a matter for the jury's consideration.

In People v. Ruth, 113 Ill App2d 28, 33, 251 NE2d 744, this court stated:

> [T]he adequacy of the identification raises a question of the credibility of the witnesses which is a matter for the determination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963) ; People v. Evans, 25 Ill2d 194, 184 NE2d 836 (1962).

We find that the identification of the defendant was clear, convincing and certain.

Defendant also argues that the introduction of the scientific evidence cannot be considered as corroborative of his commission of the robbery. However, an examination of the optical properties and refractive index of the glass standards found on defendant's clothing and those taken from the broken window at the car wash indicated that they came from a common origin and that their refractive indices were "similar." The use of the word "similar" does not detract from the reliability of this identification but merely indicates the limitations of the instruments used to measure these qualities.

There was also testimony that the putty taken from the smudges on defendant's pants was similar in chemical properties to the putty obtained from the window sill, and that the reddish-brown stains found on the towel mask and defendant's handkerchiefs and topcoat

were human blood. Defendant claims that the bloodstains found on his clothes could have been months old and could have come from almost anywhere since there was no showing as to age and no attempt was made to compare these bloodstains with Mr. Goldberg's blood type. However, the absence of a chemical analysis affects only the probative value and not the admissibility of this expert testimony. People v. Bey, 42 Ill2d 139, 246 NE2d 287. See also People v. Green, 28 Ill2d 286, 192 NE2d 398 and People v. Jennings, 252 Ill 534, 96 NE 1077.

We believe that the scientific evidence was properly submitted to the jury for their determination and that this evidence was corroborative of the commission of the armed robbery by the defendant.

The credibility of the witnesses and the weight to be given to their testimony are for the jury to decide. The verdict of a jury will not be disturbed unless it is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. People v. Hampton, 44 Ill2d 41, 253 NE2d 385, and cases there cited; People v. Howard, 121 Ill App2d 87, 257 NE2d 278. We find that the evidence was not so unsatisfactory as to cause a reasonable doubt of guilt.

Defendant also contends that the prosecution engaged in improper closing argument. Defendant cites one instance of such improper argument. However, during the trial the defendant made no objection to the prosecutor's remark. Therefore, the alleged error, if any, was waived. People v. Hampton, 44 Ill2d 41, 253 NE2d 385.

Defendant next argues that the sentence imposed by the trial court of forty to eighty years was excessive. This court is fully aware of the Supreme Court's admonition in People v. Taylor, 33 Ill2d 417, 211 NE2d 673 that the power granted to courts of review by Supreme Court Rule 615 to reduce sentences

is to be applied with considerable caution and circumspection. However, we are also aware of the constitutional provision which requires that all penalties shall be proportional to the nature of the offense. Ill Const art 2, § 11. In our opinion, the record does not warrant the imposition of a forty to eighty-year sentence. Accordingly the defendant's sentence is modified by reduction to a minimum of twelve and a maximum of twenty years, and as so modified the judgment and sentence are affirmed.

Affirmed as modified.

ENGLISH and LEIGHTON, JJ., concur.