THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES JOHNSON *et al.,* Defendants-Appellants.

(No. 71-18;

Fifth District—June 1, 1973.

Kenneth L. Jones, of Defender Project, of Mt. Vernon, (J. Earl Crisel, Senior Law Student, of counsel,) for appellants.

Robert H. Rice, State's Attorney, of Belleville, (George S. Dzielak, of Circuit Attorney Project, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants were indicted for the crimes of attempted murder and attempted armed robbery. Upon trial by jury they were found guilty of attempted murder and guilty of attempted armed robbery and were sentenced to penitentiary terms of three to seven years. Defendants appeal contending that they were not proven guilty beyond a reasonable doubt and that the trial court committed prejudicial error in admitting into evidence a .38 caliber Colt revolver.

The incident in question occurred on November 4, 1969 at about 11:30 A.M. at an East St. Louis currency exchange. The employees and the manager were present along with a patron, Mr. Rule. Although there is some discrepancy it may be considered well established that two men came into the currency exchange and were engaging in conversation. One of the employees asked one of the men, later identified as defendant Johnson, if she could help him and he replied that he was waiting for his mother. After several minutes a third man entered brandishing a

pistol, he advanced to the cashier's window and announced a stickup and told the manager not to sound any alarm. The employee at the window dropped to the floor and the manager proceeded to sound an alarm by pressing a button under the cashier's counter. With this the gunman advanced directly to the manager's window and at point blank range fired directly at the manager. Fortunately the bullet was deflected by bulletproof glass. The gunman and the other two present in the exchange fled immediately after the gunshot. One of the employees positively identified defendant Johnson as one of the two present in the exchange immediately prior to the incident.

The patron, Mr. Rule, could not identify either defendant as being one of the three men involved. When the third man came in with the gun and announced a stickup, Mr. Rule left. He saw the pistol in the hand of the third man. As he got outside he heard a gunshot and saw the three men come running out of the exchange together, off across one parking lot and commencing to cross another parking lot when he lost sight of them.

The manager of the exchange testified to the shooting but was unable to identify any of the participants.

A filling station owner testified that his business was approximately a block from the currency exchange and that there is a parking lot in conjunction with his station. On the day in question three men drove into his station in a 1955 pink and white Ford and asked if they could park in the adjacent lot. Upon being told "no" they drove their car a short distance away and parked it beside a building occupied by Goodwill Industries, backing their car into the parking space so that the front was facing the street. He saw the men leave the car. Shortly afterwards he saw two men come running through his parking lot at a pretty good speed. They ran toward the pink and white Ford. He also saw a police car slowly approaching. The police car stopped near the pink and white Ford and the policemen got out of the car with their pistols drawn. Shortly thereafter he heard shots being fired from the rear of the Goodwill building. Although he was not positive of his identification he thought the shortest of the men, defendant Irby, looked like the man that had previously asked permission to park the pink and white Ford.

It was the testimony of Officer Barnes that at the time and place in question he was in an unmarked patrol car on routine patrol near the currency exchange when he and his fellow officer saw three men running from the currency exchange. The officers took up pursuit and observed the three in flight from the time they left the currency exchange until they arrived at the pink and white Ford parked at the Goodwill Industries building. Officer Barnes described the three as young men running

at a fast rate of speed. He had them in plain sight from the time they left the currency exchange. When the three arrived at the Ford they attempted to get in but the officers pulled up and announced that they were police officers. The three men then fled together toward the back of the Goodwill building. Officer Barnes pursued the men around the back of the building while his fellow officer went around the other direction. One of the men stopped and commenced firing a pistol at Barnes who returned the fire. The other two men continued around the building. Approximately one to one and one-half minutes later Barnes returned to the front of the building and his fellow officer had the other two men in custody. These two were positively identified by Barnes as defendants Johnson and Irby and as being two of the three he had observed in flight from the currency exchange. Officer Barnes identified a .38-caliber revolver as being the gun used by the third man with whom he had engaged in an exchange of gunfire.

Officer Jeremias testified that in response to a call he went to the scene of the capture, arriving just before noon. Upon searching the immediate area he found the revolver in question four or five feet from the Goodwill building. It contained five spent shells and one loaded cartridge. Mr. Rule testified that this revolver was similar to the one used in the attempted robbery.

It is upon the foregoing testimony that the defendants base their argument that they were not proven guilty beyond a reasonable doubt. Basically it turns upon the question of identification. They contend that the State's case must fail because there was no showing that they were in the currency exchange with the necessary intent to commit the crime and that the evidence is wholly insufficient to show their connection with the gunman.

■■ With these arguments we cannot agree. The sufficiency of an identification ordinarily raises a question of credibility which is to be determined by the trier of fact. (*People v. Jackson*, 28 Ill.2d 566, 192 N.E. 2d 873.) The positive identification by one credible witness is sufficient to uphold a conviction. (*People v. Cook*, 113 Ill.App.2d 231, 252 N.E.2d 29.) One of the employees of the currency exchange who had ample opportunity to observe positively identified defendant Johnson. It is established that the three men fled the currency exchange together and that Officer Barnes had the defendants in sight from the time they left the currency exchange until they arrived at the pink and white Ford, and upon being accosted by him then fled together around the back of the Goodwill Industries building. The only time Officer Barnes lost sight of the two defendants was for a minute to a minute and one-half while he was diverted in an exchange of gunfire with the third man.

After this brief interlude he returned to the front of the building where his fellow officer had defendants in custody and he made a positive identification of the two as being the same who fled the currency exchange. The evidence presented showing the implication and participation upon the part of defendants is strong and although founded in part upon circumstantial evidence we see no room for effective argument that defendants' connection with the attempted robbery, shooting, and the ensuing flight was not proven beyond a reasonable doubt. A reviewing court will not disturb a guilty verdict on grounds of insufficient evidence unless it is so unsatisfactory, improbable or unreasonable and so palpably contrary to the evidence as to justify the court in entertaining a reasonable doubt of the defendants' guilt. (*People v. Rogers*, 132 Ill. App.2d 501, 270 N.E.2d 186.)

Defendants next contend that the court erred in admitting the .38 caliber revolver into evidence. This stance is taken because of the alleged total failure of the State's evidence to show that either of the defendants ever handled the gun in question or any other gun that might have been used in the attempted robbery. They argue that the revolver had no established link whatsoever with the defendants and the evidence concerning the revolver was totally devoid of relevance to the case against defendants.

■■■ Defendants, however, apparently misapprehend the position of the State with regard to the gun. They have never contended that either of the defendants wielded or even possessed a gun. In fact, they concede the contrary. Proof of possession by defendants is not a necessary prerequisite to its admission into evidence. Where a defendant participates in a crime in which a weapon is used, it may be admitted though he himself did not wield or possess it. (*People v. Ashley*, 18 Ill.2d 272, 164 N.E.2d 70; *People v. Maciejewski*, 294 Ill. 390.) Moreover, it is unnecessary to establish that the particular weapon was the one which was actually used. (*People v. Johnson*, 35 Ill.2d 516, 221 N.E.2d 497; *People McCasle*, 35 Ill.2d 552, 221 N.E.2d 227.) It is undisputed here that a revolver was used in the crime and, but for the bulletproof glass, that death or serious injury could have resulted. Although neither defendant wielded a gun their presence at and connection with the crime is sufficiently shown to justify the admission of the revolver into evidence and the trial court committed no error in that regard.

■■ For the reasons assigned in *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1, and *People v. Shadowens*, 10 Ill.App.3d 235, 294 N.E.2d 107, the sentences imposed in this case must be adjusted to conform to the sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1001—1—1 *et seq.*). Ill. Rev. Stat., ch. 38, art. 8,

sec. 4(c)(3) provides that the sentence for attempt to commit any forcible felony (other than attempt to commit murder, treason or aggravated kidnapping, sentencing provisions for which are governed by other sections) shall not exceed a sentence for a Class 3 felony. Sec. 1005—8—1 of the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—8—1) fixes the sentence for a Class 3 felony at not less than one year unless the court, having regard to the nature and circumstance of the offense and the character of the defendant, sets a higher minimum term, which shall in no event be greater than one third of the maximum term set by the court. Accordingly, this case is remanded to the trial court for sentencing in conformity with the provisions of the Unified Code of Corrections.

Affirmed and remanded.

G. MORAN, P. J., and CREBS, J., concur.