THE STATE, EX REL. REIDER'S, INC., *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

THE STATE, EX REL. KENNY KING CORPORATION, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(Nos. 86AP-1139 and 86AP-1140 — Decided May 10, 1988.)

*Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr.* and *Thomas R. Winters,* for relators.

*Anthony J. Celebrezze, Jr.,* attorney general, *Helen M. Ninos* and *Gerald H. Waterman,* for respondents.

STRAUSBAUGH, J.  These are original actions in mandamus, which have been consolidated for referral, brought by relators who seek an order from this court directing respondents, Industrial Commission of Ohio ("commission") and the Bureau of Workers' Compensation ("bureau"), to process relators' applications to transfer as state fund employers to self-insured status pursuant to Ohio Adm. Code 4121-9-03(N). Relators request that the writ issue to compel the commission to apply the "buy-out" provision of Ohio Adm. Code 4121-9-03(N) as that section was amended effective February 17, 1981 rather than under the rule as amended effective September 3, 1985.

The parties have stipulated the relevant facts. Effective February 17, 1981, the commission had properly adopted Ohio Adm. Code 4121-9-03. Subsection (N), as amended effective February 17, 1981, stated in part:

"If at the time of applying for the self-insurance status the employer is a state risk, which means that it has industrial insurance coverage by paying premiums to the state insurance fund, the following additional provisions shall be applicable:

"(1) When an employer requests approval of the industrial commission to transfer from state fund to self-insurance, the actuary of the commission and bureau shall determine, on the basis of the full past experience of the industrial commission and the bureau of workers' compensation, the amount of the liability of such employer to the commission and bureau for losses incurred and losses which · may be incurred *for injuries or occupational diseases occurring during the oldest four of the latest five-calendar-year period used in the most recent merit rating calculations as of the date of filing of the application for self-insurance.* If the ultimate liability of risk losses exceeds pure premium paid on payroll for those same four calendar years, the difference shall be paid by the risk to the state insurance fund. If pure premium paid exceeds the ultimate liability of risk losses, then no refund of excess premium shall be made. The same principles shall apply to cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status." (Emphasis added.)

Subsequently, on February 6, 1984, the commission adopted a resolution which declared a "temporary moratorium" on all applications for self-insurance filed on or after the date of the resolution because of a study undertaken by respondents to evaluate the actuarial soundness of the state fund as affected by the grant of self-insured status to employers. Thereafter, on June 11, 1984, the commission resolved to promulgate new rules and/or amendments to its current rules regarding the transfer of state fund employers to self-insured employers, and to evaluate all applications filed on or after February 6, 1984 pursuant to the new or amended rules. On September 3, the commission adopted a new resolution which provided that the "temporary moratorium" was terminated, effective September 3, 1985, and that all applications filed on or after February 6, 1984 would be processed in accordance with the amendments to Ohio Adm. Code 4121-9-03.

Simultaneously, that section of the Administrative Code was amended, effective September 3, 1985, pursuant to R.C. Chapter 119. Specifically, former subsection (N) was amended to subsection (M) as follows:

"If a state insurance fund employer or a succeeding employer, as described in paragraph (B)(1) of rule 4121-7-02 of the Administrative Code, applies for the privilege of paying compensation, etc., directly, to transfer from state fund to self-insurance, the actuary of the commission and bureau shall determine, on the basis of the full past experience of the industrial commission and the bureau of workers' compensation, the amount of the liability of such employer to the commission and bureau for losses incurred and losses which may be incurred *for injuries or occupational diseases occurring during the four calendar years used in the most recent merit rating calculation as of the date of filing of the application for self-insurance plus the next subsequent calendar year.* If the ultimate liability of risk losses exceeds pure premium paid on payroll for those same five calendar years, the difference shall be paid by the risk to the state insurance fund. If pure premium paid exceeds the ultimate liability of risk losses, then no refund of excess premium shall be made. The same principles shall apply to cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status. * * *" (Emphasis added.)

During the interim, both relators had filed applications seeking self-insured status under Ohio workers' compensation laws. Reider's, Inc. filed its application on March 17, 1984 while the Kenny King Corporation had filed its application on November 1, 1984. The bureau notified the Kenny King Corporation on December 16, 1985 and Reider's, Inc., on March 11, 1986 that it had calculated their liability pursuant to the provisions of Ohio Adm. Code 4121-9-03(M) as amended effective September 3, 1985, rather than pursuant to the provision of subsection (N) as amended effective February 17, 1981. Thereafter, both relators protested in writing the buy-out calculation and demanded a buy-out calculation pursuant to the provisions of Ohio Adm. Code 4121-9-03, as amended effective February 17, 1981. The bureau has refused to recalculate the buy-out amount for relators to become self-insured and has not further considered their applications for self-insurance.

Relators then instituted the instant causes in this court requesting relief in mandamus. The matter was referred to a referee pursuant to Civ. R. 53(C) and Section 13, Local Rule 11 of the Tenth District Court of Appeals. The referee, on March 23, 1988, rendered a report which made certain findings of fact and conclusions of law, to which neither party has filed objections.

Relators' complaints contend that the resolutions did not rescind the buy-out rules amended effective February 17, 1981 because the resolutions were not promulgated as rules pursuant to R.C. Chapter 119. Relators further maintain that the resolutions are invalid as retroactive attempts to alter relators' substantive rights. On the other hand, respondents maintain that the resolutions are binding upon relators' applications because the resolutions were not required to be promulgated as rules.

The referee concluded that the commission had no authority to rescind, by resolution, the operation of Ohio Adm. Code 4121-9-03, as amended effective February 17, 1981, or to retroactively apply, by resolution, the rule as amended effective September 3, 1985. The referee's conclusion was premised upon the holdings of the Supreme Court of Ohio in *McLean*

*Trucking Co.* v. *Lindley* (1982), 70 Ohio St. 2d 106, 24 O.O. 3d 187, 435 N.E. 2d 414, and *Condee* v. *Lindley* (1984), 12 Ohio St. 3d 90, 12 OBR 79, 465 N.E. 2d 450. In *McLean Trucking, supra,* the Supreme Court concluded that the Tax Commissioner's Special Instruction 21 was the "* * * functional equivalent of an R.C. 119.01(C) rule * * *." *Id.* at 114, 24 O.O. 3d at 192, 435 N.E. 2d at 419. As such, the Supreme Court invalidated Special Instruction 21 since the Tax Commissioner had failed to comply with the dictates of R.C. 119.02. *Id.* at 116, 24 O.O. 3d at 193, 435 N.E. 2d at 420. In *Condee, supra,* the Supreme Court held that a formula, which was adopted by the Tax Commissioner as an informal instruction, was the equivalent of an R.C. 119.01(C) rule which required compliance with R.C. Chapter 119 if the commissioner desired to use the formula. *Id.* at 92-93, 12 OBR at 81, 465 N.E. 2d at 452.

The referee concluded, based on the rationale of *McLean Trucking, supra,* and *Condee, supra,* that the "temporary moratorium" was but an attempt to rescind by rule, which had not been properly promulgated, an already existing rule. Accordingly, the referee recommended that this court issue writs of mandamus directing respondents to process relators' applications for self-insurance status under Ohio Adm. Code 4121-9-03, as amended effective February 17, 1981, and to recalculate the buy-out amounts as to each relator as provided by that section.

We find the referee's reasoning compelling and adopt the report and recommendation in its entirety as our own. Clearly, the commission's February 6, 1984 resolution declaring a "temporary moratorium" was but a thinly veiled attempt to rescind a preexisting rule, as defined by R.C. 119.01(C), by resolution. That resolu-

tion and its June 11, 1984 and September 3, 1985 counterparts declare a standard of uniform operation which is applicable to all employers who applied for self-insured status during the "temporary moratorium." Moreover, it is clear that the resolutions are being enforced by respondents under the authority of laws which govern their operation. See *McLean Trucking, supra,* at 115, 24 O.O. 3d at 192, 435 N.E. 2d at 419-420.

The referee also correctly concluded that relators' arguments regarding the retroactive application of the buy-out rule effective September 3, 1985 need not be addressed. Since the commission did not properly promulgate the "rule" which purported to give retroactive application to Ohio Adm. Code 4121-9-03, as amended September 3, 1985, it is not necessary to address the issue of whether the commission has the authority to promulgate a rule which is expressly retroactive. Rather, the only rule which was in effect on the filing date of relators' applications was the version of Ohio Adm. Code 4121-9-03 in effect on February 17, 1981. The commission simply had no authority to rescind by resolution, whether retroactive or not, the operation of rules properly promulgated pursuant to R.C. Chapter 119. Accordingly, it is the order of this court that the requested writs in mandamus shall issue. Respondents are directed to process relators' applications for self-insurance status pursuant to Ohio Adm. Code 4121-9-03, as amended effective February 17, 1981, and to recalculate the buy-out amounts as to each relator as provided by subsection (N) of that rule.

*Writs allowed.*

REILLY and McCORMAC, JJ., concur.