[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 619.]

THE STATE EX REL. HOOVER COMPANY, APPELLANT AND CROSS-APPELLEE, *v.* MIHM, ADMR., BUREAU OF WORKERS' COMPENSATION, APPELLEE AND CROSS-APPELLANT.

[Cite as *State ex rel. Hoover Co. v. Mihm*, 1996-Ohio-168.]

*Mandamus to compel Bureau of Workers' Compensation to consider relator's withdrawal from participation in the R.C. 4123.343 handicap reimbursement program effective for the first half of 1990 or for the bureau to calculate its assessment for that period under the pre-1990 rate standard—Writ denied, when.*

(No. 94-1788—Submitted June 25, 1996—Decided October 9, 1996.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 92AP-56.

_____

{¶ 1} In June 1990, Hoover Company ("Hoover"), appellant and cross-appellee, gave notice to Patrick G. Mihm, the Administrator of the Bureau of Workers' Compensation ("BWC"), appellee and cross-appellant, that it was withdrawing from participation in the R.C. 4123.343 handicap reimbursement program. Hoover, a self-insured employer under R.C. 4123.35 for other claims under the workers' compensation laws, also requested that this withdrawal notice be given retroactive effect to January 1, 1990. Hoover wanted out of the handicap reimbursement program because its assessment for participating had increased significantly with (1) the November 1989 enactment of R.C. 4123.35(I), which changed the basis for the assessment from payroll-based premiums to "paid compensation," and (2) the December 19, 1989 promulgation of Ohio Adm. Code 4123-17-32(D), which established the new assessment rate for participating self-insured employers after January 1, 1990.

**{¶ 2}** BWC recognized the withdrawal request as to Hoover's participation after July 1, 1990, but it denied Hoover's request for retroactive withdrawal effective January 1, 1990. Hoover protested the denial, but the BWC adjudicating committee denied the protest. The BWC administrator refused reconsideration.

**{¶ 3}** Hoover sought a writ of mandamus in the Court of Appeals for Franklin County. In its prayer for relief, Hoover requested an order directing that (1) BWC consider Hoover's withdrawal effective for the first half of 1990, or (2) BWC calculate its assessment for that period under the pre-1990 rate standard. Hoover argued that Ohio Adm. Code 4123-17-32(D) had been improperly promulgated under R.C. 111.15, when the more rigorous rule-making procedures in R.C. 119.03 applied. Hoover claimed that Ohio Adm. Code 4123-17-32(D) was thereby invalidated or rescinded by operation of R.C. 119.02.

**{¶ 4}** A referee recommended that the writ be denied, finding that BWC's promulgation of Ohio Adm. Code 4123-17-32(D) was "action [taken] under" the rate-making authority of R.C. 4123.34 and, therefore, excepted by R.C. 119.01(A) from the notice and hearing requirements of R.C. Chapter 119. The referee also rejected Hoover's argument that R.C. 4123.35(K) required promulgation of Ohio Adm. Code 4123-17-32(D) pursuant to R.C. Chapter 119. The referee found that (1) R.C. 4123.35(K) imposed R.C. Chapter 119 rule-making procedures only for assessments of self-insurers who had been granted this status for the first time within the last calendar year, and (2) Hoover's renewal of its self-insuring status did not count as a first-time qualification.

**{¶ 5}** Over Hoover's objections, the court of appeals agreed with the referee that R.C. 4123.35(K) did not require promulgation of Ohio Adm. Code 4123-17-32(D) in accordance with R.C. Chapter 119. However, the court agreed with Hoover that Ohio Adm. Code 4123-17-32(D) represented "action [taken] under" R.C. 4123.343 and 4123.35, as well as R.C. 4123.34, for purposes of the R.C. 119.01(A) exception. Since R.C. 119.01(A) does not except "action under" R.C.

4123.343 and 4123.35, the court held that Ohio Adm. Code 4123-17-32(D) was invalid because it had not been promulgated in compliance with R.C. Chapter 119.

{¶ 6} But the court of appeals still denied the writ. As to Hoover's claim for retroactive effect of its notice of withdrawal from the handicap reimbursement program, the court found that "the invalidity of the administrative rule confers no such right." And, as to applying the pre-1990 assessment rate, which had also been set by administrative rule, the court said "presumably the old calculation method would not reflect the changes made by the [1989] amendment to R.C. 4123.35."

{¶ 7} The cause is now before this court pursuant to Hoover's appeal as of right and the allowance of BWC's cross-appeal.

_____

*Black, McCuskey, Souers & Arbaugh*, *Gust Callas* and *Charles E. Ringer*, for appellant and cross-appellee.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellee and cross-appellant.

_____

***Per Curiam.***

{¶ 8} Two issues are presented for our review. First, is the promulgation of Ohio Adm. Code 4123-17-32(D) invalid due to BWC's failure to comply with R.C. Chapter 119? Second, does BWC owe a duty, by virtue of the asserted improper promulgation of Ohio Adm. Code 4123-17-32(D), either to grant retroactive effect to Hoover's notice of withdrawal or to calculate Hoover's assessment for the first half of 1990 under the pre-1990 standard? For the reasons that follow, we hold that Hoover has no right to BWC's performance of the requested acts, regardless of whether Ohio Adm. Code 4123-17-32(D) was promulgated properly. Accordingly, we affirm the court of appeals' judgment denying the writ of mandamus and do not pass upon the alleged invalidity of Ohio Adm. Code 4123-17-32(D).

**{¶ 9}** In 1989 and before, Hoover participated in the handicap reimbursement program established under R.C. 4123.343. This statute, enacted in 1955 to encourage employment of disabled workers, charges employee injury claims attributable to a preexisting handicap to the surplus portion of the state insurance fund. Fulton, Ohio Workers' Compensation Law (1991) 312, Section 14.15; Young, Workman's Compensation Law of Ohio (2 Ed. 1971) 288, Section 17.5. The surplus fund either pays such claims directly or reimburses self-insured employers for paid handicap claim expenses. Fulton, *supra.*

**{¶ 10}** Since the 1986 enactment of R.C. 4123.343(G), 141 Ohio Laws, Part I, 745, self-insured employers have been allowed to withdraw from or "opt out" of the handicap reimbursement program. In June 1990, Hoover gave notice of its withdrawal mainly to avoid the consequences of R.C. 4123.35(I), effective November 3, 1989. 143 Ohio Laws, Part II, 3197, 3328. Beginning on July 1, 1990, R.C. 4123.35(I) authorized a new basis for calculating the assessment of participating self-insured employers to compensate the surplus fund and to finance the program. Previously, all self-insurers contributed to the surplus fund by paying a percentage of the payroll-based premium they would have paid as a state fund employer, and self-insurers participating in the handicap reimbursement program paid an additional percentage of that premium. Young, *supra,* at 237, Section 13.6; Fulton, *supra,* at 310-311, Section 14.13; Ohio Adm. Code 4123-17-30(B).[1] The

---

1. Ohio Adm. Code 4123-17-30, effective January 1, 1990, provided, in part:

"The bureau of workers' compensation, exercising its authority to determine and levy against the self-insuring employers an amount to be paid into the state insurance fund pursuant to sections 4123.34 and 4123.35 of the Revised Code ***, hereby sets that contribution to be effective for the payroll reporting period beginning on July 1, 1989, as follows:

" ***

"(B) Each self-insuring employer shall make payment of one and five-tenths per cent of its premium, computed at the basic rate, for self-insuring employers' surplus fund charges excluding handicap reimbursement charges, except that each self-insuring employer that does not elect to not participate in the handicap reimbursement program shall make payment of an additional three and five-tenths per cent of its premium, computed at the basic rate." 1989-1990 Ohio Monthly Record

new handicap reimbursement assessment was to be calculated based on the "paid compensation" expended by each self-insurer in the preceding year.[2] Apparently, it was also to be calculated separately and only in relation to other self-insurers, such that handicap claim costs were no longer spread over all employers according to their classification of hazard. See Fulton, *supra,* at 311, Section 14.13. This change, together with the 12.4 percent rate Ohio Adm. Code 4123-17-32(D)[3] applied to the self-insurer's paid compensation, allegedly increased Hoover's assessment by six hundred percent.

{¶ 11} Hoover claims that it would have opted out of the handicap reimbursement program timely, that is, before December 31, 1989, with better notice of the new assessment rate in Ohio Adm. Code 4123-17-32(D). Hoover's

656. See, also, Ohio Adm. Code 4121-7-30, the predecessor to this rule (1988-1989 Ohio Monthly Record 1315).

2. Under R.C. 4123.35(I), paid compensation is also the basis upon which assessments were calculated for the former intentional tort fund, the safety and hygiene fund, certain administrative costs, and the non-handicap reimbursement portion of the surplus fund. "Paid compensation" consists essentially of living maintenance benefits and every type of workers' compensation, including awards for violations of specific safety rules, and amounts paid in lieu of such compensation. R.C. 4123.35(L).

[3] 3 Ohio Adm. Code 4123-17-32, also effective January 1, 1990, provided:

"The workers' compensation board, exercising its authority to determine and levy against self-insuring employers amounts to be paid to support the intentional tort fund, the safety and hygiene fund, the administrative cost fund, the portion of the surplus fund that is not used for handicap reimbursement, and the portion of the surplus fund that is used for handicap reimbursement, pursuant to sections *** 4121.37 [safety and hygiene fund], 4121.80 [intentional tort fund], 4123.34 [premium rates fixed and maintained], 4123.342 [administrative costs fund], and 4123.35 of the Revised Code *** hereby sets the self-insuring employer assessments to be effective January 1, 1990, and paid by August 31, 1990, as follows:

"(A) The assessments shall be on the basis of the paid compensation attributable to the individual self-insuring employer as a fraction of the total amount of paid compensation for the previous calendar year attributable to all amenable self-insuring employers.

"***

"(D) The assessment to fund the portion of the surplus fund that is used for handicap reimbursement for all self-insuring employers operating in Ohio who have not made an election to opt out of the handicap reimbursement program under the provisions of division (G) of section 4123.343 of the Revised Code shall be computed by multiplying the following rate by the individual self-insuring employer's paid compensation for calendar year 1989:

"Rate

"Surplus fund (handicap)   1240." 1989-1990 Ohio Monthly Record, 656.

speculation as to this possibility, however, is insufficient to justify retroactive relief from the assessment. Moreover, Hoover's cited authority—*Condee v. Lindley* (1984), 12 Ohio St.3d 90, 12 OBR 79, 465 N.E.2d 450--does not establish a right to this or other affirmative relief upon the invalidation or rescission of a regulation pursuant to R.C. 119.02. In *Condee*, we invalidated a Tax Commissioner's policy for apportioning the tax value of public utility property because the policy had not been formally promulgated in accordance with R.C. Chapter 119. We did not go further and attempt to correct the inequity challenged by the complaining county auditor.

{¶ 12} Nor has Hoover shown a clear right to assessment for the first half of 1990 under pre-1990 standards. The parties agree that the enactment of R.C. 4123.35(I) changed the self-insurers' handicap reimbursement assessment from a percentage of the payroll-based premium under former Ohio Adm. Code 4123-17-30(B) to a calculation based on paid compensation. Ohio Adm. Code 4123-17-30(B), therefore, has been superseded by R.C. 4123.35(I). *DLZ Corp. v. Dept. of Adm. Serv.* (1995), 102 Ohio App.3d 777, 781, 658 N.E.2d 28, 31 ("An administrative rule that would preclude the use of a statute must yield to the statute."). See, also, *State ex rel. Kildow v. Indus. Comm.* (1934), 128 Ohio St. 573, 581, 1 O.O. 235, 238, 192 N.E.2d 873, 876, and *State ex rel. Galloway v. Indus. Comm.* (1938), 134 Ohio St. 496, 13 O.O. 102, 17 N.E.2d 918, paragraph one of the syllabus (rules in conflict with express provisions of statutes are unenforceable).

{¶ 13} For this reason, Hoover's cited authority for invoking the previous assessment standard--*State ex rel. Reider's, Inc. v. Indus. Comm.* (1988), 48 Ohio App. 3d 242, 549 N.E.2d 532--also does not apply here. In *Reider's*, the Court of Appeals for Franklin County invalidated a resolution in which the Industrial Commission declared a "temporary moratorium" on processing applications for self-insured status. The court held that the temporary moratorium "was but a thinly veiled attempt to rescind a preexisting rule, as defined by R.C. 119.01(C), by

resolution," *id.* at 245, 549 N.E.2d at 534, and it ordered that the applications for self-insurance be processed in accordance with the preexisting rule. However, the *Reider's* court was not confronted with an intervening statute, similar to R.C. 4123.35(I), that had changed the procedure for processing these applications and was in conflict with the preexisting rule.

**{¶ 14}** Finally, Hoover complains that the court of appeals' decision--to deny mandamus despite its conclusion that Ohio Adm. Code 4123-17-32(D) was invalid--left the parties "in limbo" as far as the assessment of self-insured employers participating in the handicap reimbursement program. However, the invalidation of an administrative rule does not, as Hoover seems to argue, necessarily leave the regulated agency rudderless in carrying out statutory duties. Rather, the agency must still execute authority reasonably and in a manner consistent with the objectives and standards that governing statutes impose. See, *e.g., Dressler Coal Corp. v. Call* (1981), 4 Ohio App.3d 81, 85, 4 OBR 161, 166, 446 N.E.2d 785, 789 (agency permissibly enforced statutory standards with internally developed evaluation criteria where its previously adopted rules had been enjoined and new rules had not yet been promulgated). Thus, even if we were to declare Ohio Adm. Code 4123-17-32(D) invalid as improperly promulgated, BWC would nevertheless have been required to execute its charge under R.C. 4123.35(I) in accordance with R.C. Chapter 4123 and other applicable law.

**{¶ 15}** For a writ of mandamus to issue, Hoover must establish that it has a clear legal right to BWC's performance of a clear legal duty, and that Hoover has no adequate remedy in the ordinary course of law. *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 653 N.E.2d 349. Hoover has failed to satisfy this standard. Accordingly, the court of appeals correctly denied the requested writ of mandamus and its judgment is affirmed.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 16} We have before us an appeal (Hoover) and a cross-appeal (BWC). I concur with the ultimate judgment of the majority. I also concur with the majority's treatment of Hoover's appeal. I respectfully dissent from the judgment of the majority which, in effect, ignores the very important issue and concept brought to us by BWC's cross-appeal and our allowance thereof. Accordingly, I respectfully dissent as to that portion of the majority's judgment and would, instead, reverse the court of appeals on the issue presented by BWC and find the cross-appeal of BWC to be well taken.

{¶ 17} In its cross-appeal, BWC contends that promulgation of Ohio Adm. Code 4123-17-32(D) represents "action [taken] under" R.C. 4123.34 and is, therefore, excepted from R.C. Chapter 119 rule-making. I agree. Thus, I would hold that (1) R.C. 4123.34, together with R.C. 4123.29, confers on BWC the authority to set rates, including rates for assessing self-insured employers, to maintain the solvency of the surplus fund, (2) Ohio Adm. Code 4123-17-32(D) establishes a rate for this purpose, and, therefore, (3) Ohio Adm. Code 4123-17-32(D) represents action under R.C. 4123.34 and is excepted from R.C. Chapter 119 compliance. I would, therefore, reject the court of appeals' conclusion that Ohio Adm. Code 4123-17-32(D) was invalidly promulgated.

{¶ 18} Hoover contends that it did not receive sufficient notice of the new assessment rate in Ohio Adm. Code 4123-17-32(D) because the regulation was promulgated pursuant to the abbreviated rule-making procedures in R.C. 111.15 (rule effective ten days after proper filing). Hoover maintains that the thirty-day

notice and hearing procedures in R.C. 119.03 applied.  In defining the agencies to which R.C. Chapter 119 applies, R.C. 119.01(A) provides in part:

"*Sections 119.01 to 119.13 of the Revised Code do not apply * * * to the actions of the* industrial commission and *bureau of workers' compensation under * * * sections 4123.29* [authorizes administrator to, *inter alia*, fix premium rates to maintain state insurance fund], *4123.34* [authorizes administrator to fix and maintain premium rates for state insurance fund and for creation and maintenance of surplus fund], 4123.341, 4123.342, 4123.40, 4123.411, 4123.44, 4123.441, 4123.442, and divisions (B), (C), and (E) of section 4131.14 of the Revised Code." (Emphasis added.)

{¶ 19} The court of appeals found that the promulgation of Ohio Adm. Code 4123-17-32(D) involved more than just BWC "action under * * * R.C. 4123.34"; it also represented action taken under R.C. 4123.343 and 4123.35, in that the rule set rates to be applied to the compensation paid by self-insurers participating in the handicap reimbursement program.  Neither R.C. 4123.343 nor 4123.35 is excepted by R.C. 119.01(A).  Thus, the court of appeals found that the promulgation of Ohio Adm. Code 4123-17-32(D) required compliance with R.C. Chapter 119.

{¶ 20} BWC disputes this finding, arguing, in effect, that (1) R.C. 4123.34 confers the broad authority under which BWC sets all rates to maintain the state insurance and surplus funds and, therefore, (2) all rate setting is excepted from R.C. Chapter 119 compliance.  The fact that the formula for calculating the rate appears elsewhere in R.C. Chapter 4123 is, according to BWC, irrelevant, since the "action" is still rate-setting.  I agree.

{¶ 21} R.C. 4123.29 and 4123.34 establish the state insurance fund and, more important for this case, the surplus fund into which R.C. 4123.35(I) assessments are paid.  These statutes also require BWC to set premiums according to payroll-based basic and merit rates and to guarantee the solvency of these funds.  Thus, rate-setting which establishes premiums or premium-based assessments, as

were paid by self-insured employers under Ohio Adm. Code 4123-17-30, is fundamentally "action [taken] under" R.C. 4123.29 and 4123.34. Accordingly, to the extent that BWC determined a self-insurer's contribution to the surplus fund on the basis of premiums authorized by R.C. 4123.29 and 4123.34, those acts were excepted from R.C. Chapter 119 pursuant to R.C. 119.01(A).

{¶ 22} Hoover recognizes that premium rate-setting is excepted from R.C. Chapter 119 rule-making. However, since the new Ohio Adm. Code 4123-17-32(D) assessment is authorized by R.C. 4123.35(I) and is no longer a percentage of the premiums authorized by R.C. 4123.29 and 4123.34, Hoover maintains that the premiums paid by state fund employers must be distinguished from the assessments that self-insured employers pay and that imposing an assessment constitutes action only under R.C. 4123.35(I). BWC gives no credence to the premium/assessment distinction, arguing that a self-insurer's assessment is equivalent to the premium all employers are obligated to pay to maintain the solvency of the state insurance fund and the surplus fund.

{¶ 23} While I am not prepared to say, based on the arguments before us, that premiums and assessments are, for all purposes, equivalent, I do believe that to accept Hoover's distinction requires us to ignore that all employers, whether they pay premiums as state fund employers or assessments as self-insurers, are responsible in some measure for maintaining the surplus fund. More specifically, while R.C. 4123.35(B) relieves self-insurers of premiums attributable to wage compensation and medical and funeral expenses, these employers must still "pay into the state insurance fund such amounts as are required to be credited to the surplus fund in [R.C. 4123.34(B)]" under R.C. 4123.35(D). The self-insurer's assessment, therefore, represents its share of the premium amount.

{¶ 24} The new assessment authorized by R.C. 4123.35(I), while no longer based on a percentage of the premium, serves the same purpose. The assessment represents the self-insured employer's share of the costs of maintaining the surplus

and various other funds. As a result, premiums and assessments are both chargeable pursuant to the basic authority in R.C. 4123.29 and 4123.34, and rules governing them are excepted from compliance with R.C. Chapter 119. Accordingly, I would hold that assessments and premiums are sufficiently related, at least insofar as deciding which rule-making procedures apply, to find that both are generated pursuant to the rate-making authority of R.C. 4123.29 and 4123.34.

{¶ 25} Moreover, the non-payroll basis for the new assessments--paid compensation--does not sever the fundamental connection of premiums and assessments to R.C. 4123.29 and 4123.34 rate-setting. Where payroll is not an adequate measure for determining the premium to be paid for the degree of hazard, R.C. 4123.29(A)(2) authorizes premiums calculated on "such other basis, consistent with insurance principles, as is equitable in view of the degree of hazard." Thus, while payroll is ordinarily the basis for determining contributions to the state insurance fund, other equitable means may be used.

{¶ 26} Therefore, Ohio Adm. Code 4123-17-32(D) was properly promulgated under R.C. 111.15 because it represents "action [taken] under" R.C. 4123.29 and 4123.34 rate-making authority. R.C. 119.01(A) excepts such action. Ohio Adm. Code 4123-17-32(D), therefore, is not invalid, and the court of appeals' judgment holding otherwise should be reversed.

{¶ 27} Accordingly, I concur in part and dissent in part. I would affirm on the appeal and reverse on the cross-appeal.

_____