THE STATE EX REL. H.C.F., INC., APPELLEE AND CROSS-APPELLANT,
*v.* OHIO BUREAU OF WORKERS' COMPENSATION ET AL.,
APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. H.C.F., Inc. v. Ohio Bur. of Workers' Comp.* (1998), 80 Ohio St.3d 642.]

(No. 95–714—Submitted September 23, 1997—Decided January 7, 1998.)

---

644

*Porter, Wright, Morris & Arthur, Charles J. Kurtz III* and *Christopher C. Russell,* for appellee and cross-appellant.

*Betty D. Montgomery,* Attorney General, and *Dennis L. Hufstader,* Assistant Attorney General, for appellants and cross-appellees.

**Per Curiam.** The dispositive issue in this cause is, Did former Ohio Adm.Code 4123–19–03(M) require HCF to buy Crestview and Piketon out of the State Insurance Fund? For the reasons that follow, we hold that HCF is not subject to former Ohio Adm.Code 4123–19–03(M), because it was not a succeeding employer under former Ohio Adm.Code 4121–7–02(B)(1), nor did it merge with Crestview and Piketon. Accordingly, we affirm the court of appeals' judgment and issue a writ of mandamus vacating the Board Subcommittee's order. Thus, we do not reach the due process claims in HCF"s cross-appeal.

Former Ohio Adm.Code 4123–19–03(M) provided:

"If a state insurance fund employer *or a succeeding employer, as described in [Ohio Adm.Code 4121–7–02(B)(1) ], applies for the privilege of paying compensation, etc., directly, to transfer from state fund to self insurance,* the actuary of the bureau shall determine, on the basis of the full past experience of the commission and the bureau of workers' compensation, the amount of the liability of such employer to the bureau for losses incurred and losses which may be incurred for injuries or occupational diseases occurring during the four calendar years used in the most recent merit rating calculation as of the date of filing of the application for self-insurance plus the next subsequent calendar year. *If the ultimate liability of risk losses exceeds pure premium paid on payroll for those same five calendar years, the difference shall be paid by the risk to the state insurance fund.* If pure premium paid exceeds the ultimate liability of risk losses, then no refund of excess premium shall be made. As used in this rule, 'pure premium paid' means premiums actually paid under a base rating and experience rating plan, and premium due or that would have been paid under a base rating and

experience rating plan if the employer has been participating in a retrospective rating plan. Obligations under a retrospective rating plan remain the responsibility of the employer regardless of the employer's status. *The same principles shall apply to cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status.*" (Emphasis added.) 1990–1991 Ohio Monthly Record 147.

Former Ohio Adm.Code 4121–7–02(B)(1) provided:

"Where one legal entity, *not having coverage in the most recent experience period,* wholly succeeds another legal entity in the operation of a business, his or its rate shall be based on the predecessor's experience within the most recent experience period." (Emphasis added.) 1979–1980 Ohio Monthly Record 4–359.

The agencies rely principally on R.C. 4123.32(D), as interpreted and applied in *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.* (1991), 62 Ohio St.3d 81, 578 N.E.2d 458. They argue that, for the purpose of Ohio Adm.Code 4123–19–03(M), (1) a succeeding employer is "simply a transferee of a business in whole or in part," *id.* at 84, 578 N.E.2d at 460, (2) HCF's purchases represent a virtual takeover of Crestview's and Piketon's businesses, and, therefore, (3) HCF is liable for the assessed buy-out payments. We reject this argument for the reasons cited by the court of appeals.

R.C. 4123.32 gives BWC's administrator authority to administer the State Insurance Fund. As part of his power to collect, maintain, and disburse this fund, R.C. 4123.32(D) authorizes the BWC administrator to adopt rules establishing "the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance." Division (D) continues:

"[T]he administrator may require that if any employer transfers his business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all *contributions due under this chapter.*"

The court of appeals correctly found that R.C. 4123.32(D) is an enabling statute and does not independently impose any employer obligation. Instead, former Ohio Adm.Code 4121–7–02(A) through (C) governed "the rate to be applied where one employer takes over the occupation or industry of another." R.C. 4123.32(D). These paragraphs explained the basic (or manual) rate at which a premium is charged and how risk coverage is transferred. Paragraphs (B)(1) through (4), in particular, established how to calculate succeeding employer premiums—a formula that depends on whether the predecessor is paying basic rate premiums or has

a merit rating and whether the predecessor is wholly or only partially succeeded in its business.[1]

The agencies urge us to extend Ohio Adm.Code 4121–7–02(B)(1) to HCF, notwithstanding the "not having coverage" clause. They argue that under *Lake Erie, supra,* R.C. 4123.32(D) requires only that HCF be a successor in whole or part. Thus, the rule conflicts with the statute, and the rule must yield. *State ex rel. Kildow v. Indus. Comm.* (1934), 128 Ohio St. 573, 581, 1 O.O. 235, 238, 192 N.E. 873, 876 (statutes override administrative rules whenever they conflict, and the commission is not estopped from claiming its conflicting rules invalid). Even assuming HCF's contested succession to Crestview's and Piketon's businesses, this argument does not persuade us that Ohio Adm.Code 4121–7–02(B)(1) required the claimed buy-outs.

First, *Lake Erie* is not controlling here. *Lake Erie* involved a State Fund employer who objected to having its premium based on the poor experience of its State Fund predecessor. The court of appeals in the instant case properly recognized that *Lake Erie* had nothing at all to do with a self-insured employer's objection to a buy-out requirement. Moreover, *Lake Erie* construed R.C. 4123.32(D) as it related to Ohio Adm.Code 4121–7–02(B)(3) and (4), but not (B)(1), which is the only paragraph that contains the "not having coverage" language. *Id.,* 62 Ohio St.3d at 83, 578 N.E.2d at 460.

Second, BWC and the commission must follow their own rules as written. *State ex rel. Cincinnati v. Ohio Civ. Rights Comm.* (1981), 2 Ohio App.3d 287, 288, 2 OBR 317, 319, 441 N.E.2d 829, 831. They cannot give selective effect to provisions to produce a desired result or otherwise change them without complying with the R.C. Chapter 119 rule-making procedure. *State ex rel. Reider's, Inc. v. Indus. Comm.* (1988), 48 Ohio App.3d 242, 549 N.E.2d 532. Accordingly, the court of appeals justifiably applied the "not having coverage" clause and properly rejected appellants' construction of Ohio Adm.Code 4121–7–02(B)(1).

---

1. Ohio Adm.Code 4123–19–03(M) was amended in February 1993 to incorporate by reference all of Ohio Adm.Code 4121–7–02(B) (now, Ohio Adm.Code 4121–17–02[B]). 1992–1993 Ohio Monthly Record 862; 1993–1994 Ohio Monthly Record 279. Complementing paragraph (B)(1), paragraph (B)(2) provided that when a basic-rate paying employer wholly succeeds one or more basic-rate paying employers, the successor shall pay premiums at the basic rate. Paragraph (B)(3) provided that when an employer having "an established coverage or having had experience in the most recent experience period" wholly succeeds one or more similarly situated employers and at least one of the group is merit-rated, the successor's premium will be based on a combination of all the employers' experience. Paragraph (B)(4) provided that when an employer succeeds only to a portion of the business conducted by one or more employers "having an established coverage or having had experience in the most recent experience period," the successor shall pay premium based on the predecessor's most recent experience period pertaining to the portion of the business acquired.

But our analysis does not end here. HCF must clear a second hurdle: Ohio Adm.Code 4123–19–03(M). That rule requires a buy-out in "cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status." Thus, the agencies offer an alternative argument: that HCF effectively merged with Crestview and Piketon by purchasing so much of their businesses. They again rely on *Lake Erie, supra*, asserting that Ohio Adm.Code 4123–19–03(M) uses "merger" in a broad sense, not the technical corporate sense applied to determine successor liability. We also reject this argument.

In *Lake Erie*, we refused to apply common-law theories of corporate successor liability to determine when succeeding employers must assume their predecessor's experience rating. And we did not discard those principles arbitrarily. Rather, we reasoned that since R.C. 4123.32(D) itself defined a successor in interest, corporate common law was irrelevant. *Id.*, 62 Ohio St.3d at 83–84, 578 N.E.2d at 460–461. *Lake Erie*, therefore, provides no authority for disregarding a statutory or regulatory definition or for ascribing to a legal term some meaning that resists common understanding.

R.C. 4123.32(D) does not define "merger." Nor do the agencies assert that a statutory merger has occurred under R.C. Chapter 1701. Instead, their argument suggests a de facto merger. A de facto merger is the common-law method of imposing successor liability "without an official declaration" of a merger. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 349, 617 N.E.2d 1129, 1134. *Welco* explained:

"The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *Id.* at 349, 617 N.E.2d at 1134.

Appellants do not cite evidence to satisfy any of these criteria. HCF continued Crestview's and Piketon's business activity, but it apparently did not retain their corporate directors or officers. Moreover, no evidence establishes an assets-for-stock exchange, arguably the *sine qua non* of a de facto merger. *Welco, supra*, at 349, 617 N.E.2d at 1134. Similarly, no evidence establishes the corporate demise of either Crestview or Piketon. The record reflects only that both corporations were in good standing with the Ohio Secretary of State at least until April 1992, and that Piketon agreed to a noncompetition clause, which implies that Piketon remained in existence. Finally, appellants cite no evidence to prove that HCF assumed any of Crestview's or Piketon's liabilities or obligations. HCF's purchases, therefore, do not represent de facto mergers. See *Lake Erie, supra* (commonality of directors, contractual agreement to retain all employees,

and successor profit-sharing plan suggest that State Fund employer's purchase of predecessor's assets was more than a mere cash sale).

The court of appeals correctly found that HCF had no buy-out liability under the succeeding employer definition in Ohio Adm.Code 4121–7–02(B)(1), and appellants have not established a merger for the purpose of Ohio Adm.Code 4123–19–03(M). Accordingly, we affirm and issue the writ of mandamus vacating the Board Subcommittee's order.

*Judgment affirmed
and writ issued.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.