[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 642.]

THE STATE EX REL. H.C.F., INC., APPELLEE AND CROSS-APPELLANT, *v*. OHIO BUREAU OF WORKERS' COMPENSATION ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. H.C.F., Inc. v. Ohio Bur. of Workers' Comp.*, 1998-Ohio-175.]

*Workers' compensation—Merger by a self-insuring employer and a State fund employer—Former Ohio Adm.Code 4123-19-03(M) and 4121-7-02(B)(1), construed and applied.*

(No. 95-714—Submitted September 23, 1997—Decided January 7, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 93APD12-1743.

————————————

{¶ 1} Appellants and cross-appellees, the Ohio Bureau of Workers' Compensation ("BWC"), the BWC Board Subcommittee, and the Industrial Commission of Ohio ("commission"), seek reversal of the Franklin County Court of Appeals' decision granting appellee and cross-appellant, Health Care Facilities, Inc. ("HCF"), a writ of mandamus. The writ directed the BWC Board Subcommittee to vacate its order requiring HCF to make certain payments required by Ohio Adm.Code 4[1]23-19-03(M).

{¶ 2} HCF is a self-insured employer. In January 1991, HCF purchased the following assets from Crestview Manor Nursing Home II, Inc. ("Crestview"): $1,815,000 in real estate; its Ohio nursing home license and certificate of need; all of its equipment, including "medical, patient care, kitchen, housekeeping, office and maintenance equipment; drugs and supplies[,] linens, office, patient furniture and miscellaneous inventories"; its patient medical records; and its facility name. The purchase contract expressly excluded other assets from the deal, including all

of Crestview's "cash, * * * bank accounts, certificates of deposit and other financial accounts"; its accounts receivable, its nonpatient business records; and a van the facility used but did not own. The parties further agreed that HCF would provide consultation services to Crestview pending closing and that Crestview would "take all such steps as may be requisite to put [HCF] in actual possession, operation and control of the properties, assets and business to be transferred [under the contract]." Crestview was a State Fund employer.

{¶ 3} In August 1991, HCF purchased the following assets from Piketon Health Care, Inc. ("Piketon"): $4,565,000 in real estate; its Ohio nursing home license and certificate of need; all of its equipment, including "medical, patient care, kitchen, housekeeping, office and maintenance equipment[,] drugs and supplies, linens, office and patient furniture and miscellaneous inventories * * *." The purchase contract expressly excluded other assets from the deal, including all of Piketon's "cash, investment securities, bank deposits, and other financial accounts"; its accounts receivable, its "[n]otes [r]eceivable from third parties"; and its computer software. The purchase agreement also provided that (1) HCF would retain Piketon's vice-president as a consultant; (2) Piketon principals would not compete within a thirty-five-mile radius for three years, except to continue other existing operations; (3) HCF would extend its best efforts to retain Piketon's employees; and (4) Piketon would "take all such steps as may be requisite to put [HCF] in actual possession, operation and control of the properties, assets and business to be transferred [under the contract]." Piketon was a State Fund employer.

{¶ 4} HCF notified BWC of these purchases in July 1991 and asked that both the Crestview and Piketon locations be added to the records of its self-insured coverage. BWC's law director refused this request, relying upon (1) former Ohio Adm.Code 4123-19-03(M), which required State Fund insured employers and certain "succeeding employers" applying for self-insured status to "buy out" of the

2

State Insurance Fund; and (2) the definition of "succeeding employer" in former Ohio Adm.Code 4121-7-02(B)(1), incorporated by reference into Ohio Adm.Code 4123-19-03(M). That definition describes a "succeeding employer" as a "legal entity, not having coverage in the most recent experience period, [that] wholly succeeds another legal entity in the operation of a business." The law director determined that HCF had wholly succeeded Crestview and Piketon in the operation of each business and, therefore, that HCF was required to "buy out" Crestview and Piketon.

{¶ 5} BWC subsequently calculated the buy-outs at $592,832 for Crestview and $479,376 for Piketon. HCF protested, but the BWC Adjudicating Committee found HCF responsible for both amounts, albeit for reasons other than those cited by the law director. The committee first determined that since HCF was self-insured, it had "coverage" for the purpose of Ohio Adm.Code 4121-7-02(B)(1) and, thus, was not a "succeeding employer." However, the committee also found that HCF had effectively merged with Crestview and Piketon and, since Ohio Adm.Code 4123-19-03(M) specifically required that self-insured employers buy out State Fund insured employers with which they merged, the committee concluded that HCF owed the disputed payments.

{¶ 6} HCF appealed to the BWC Board Subcommittee, the last available level of administrative review. The subcommittee affirmed the adjudicating committee's order.

{¶ 7} HCF then requested the instant writ in the court of appeals, arguing that (1) the composition of the adjudicating committee—three BWC employees, including a staff attorney employed by the very BWC law director who had ruled against HCF—violated its right to an impartial hearing; (2) the Board Subcommittee failed to follow its own rules; and (3) HCF was not subject to the Ohio Adm.Code 4123-19-03(M) buy-out requirement. With respect to that rule, HCF maintained that under Ohio Adm.Code 4121-7-02(B)(1), a "succeeding

employer" must at least be a legal entity "not having coverage in the most recent experience period," and that even the Board Subcommittee had recognized that HCF had coverage as a self-insured employer. HCF also claimed that the buy-out provision of Ohio Adm.Code 4123-19-03(M) was meant for employers who transfer from State Fund to self-insured coverage and that it had already transferred to self-insurance back in 1985.

{¶ 8} A referee rejected all of HCF's arguments and recommended denial of the writ. The referee found that HCF was a succeeding employer by applying the definition of "successor in interest" in R.C. 4123.32(D)—a transferee of business "in whole or in part." The referee all but ignored the "not having coverage" language in Ohio Adm.Code 4121-7-02(B)(1), concluding that the phrase describes the method for calculating the successor's premium rate, depending on the employer's coverage status and that the phrase was not meant to define "succeeding employer." The referee noted that HCF's argument would expose the State Fund to continuing liability for claims filed by Crestview and Piketon employees without any corresponding premium payments from HCF. She reasoned that HCF had basically absorbed the businesses of Crestview and Piketon and was, in effect, applying for self-insured coverage as to those accounts. Finally, the referee found that (1) HCF had failed to show that the adjudicating committee was biased, (2) the committee had been established in conformity with R.C. 4123.291, and (3) the Board Subcommittee had properly applied the relevant administrative rules.

{¶ 9} On HCF's objections, the court of appeals rejected the referee's analysis and granted the requested writ. The court refused to hold that policy reasons justify reading the "having coverage" language out of Ohio Adm.Code 4121-7-02(B)(1). And because HCF had "coverage" in the sense that it had been self-insured against industrial accident and disease, the court of appeals held that HCF had no liability for the buy-out amounts ordered by the Board Subcommittee.

The court concurred, however, in the referee's resolution of HCF's due process claims.

{¶ 10} The cause is now before this court upon an appeal and cross-appeal as of right.

———————————

*Porter, Wright, Morris & Arthur*, *Charles J. Kurtz III* and *Christopher C. Russell*, for appellee and cross-appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellants and cross-appellees.

———————————

*Per Curiam.*

{¶ 11} The dispositive issue in this cause is, Did former Ohio Adm.Code 4123-19-03(M) require HCF to buy Crestview and Piketon out of the State Insurance Fund? For the reasons that follow, we hold that HCF is not subject to former Ohio Adm.Code 4123-19-03(M), because it was not a succeeding employer under former Ohio Adm.Code 4121-7-02(B)(1), nor did it merge with Crestview and Piketon. Accordingly, we affirm the court of appeals' judgment and issue a writ of mandamus vacating the Board Subcommittee's order. Thus, we do not reach the due process claims in HCF's cross-appeal.

{¶ 12} Former Ohio Adm.Code 4123-19-03(M) provided:

"If a state insurance fund employer *or a succeeding employer, as described in [Ohio Adm.Code 4121-7-02(B)(1)], applies for the privilege of paying compensation, etc., directly, to transfer from state fund to self insurance,* the actuary of the bureau shall determine, on the basis of the full past experience of the commission and the bureau of workers' compensation, the amount of the liability of such employer to the bureau for losses incurred and losses which may be incurred for injuries or occupational diseases occurring during the four calendar years used in the most recent merit rating calculation as of the date of filing of the application

5

for self-insurance plus the next subsequent calendar year. *If the ultimate liability of risk losses exceeds pure premium paid on payroll for those same five calendar years, the difference shall be paid by the risk to the state insurance fund.* If pure premium paid exceeds the ultimate liability of risk losses, then no refund of excess premium shall be made. As used in this rule, 'pure premium paid' means premiums actually paid under a base rating and experience rating plan, and premium due or that would have been paid under a base rating and experience rating plan if the employer has been participating in a retrospective rating plan. Obligations under a retrospective rating plan remain the responsibility of the employer regardless of the employer's status. *The same principles shall apply to cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status.*" (Emphasis added.) 1990-1991 Ohio Monthly Record 147.

{¶ 13} Former Ohio Adm.Code 4121-7-02(B)(1) provided:

"Where one legal entity, *not having coverage in the most recent experience period*, wholly succeeds another legal entity in the operation of a business, his or its rate shall be based on the predecessor's experience within the most recent experience period." (Emphasis added.) 1979-1980 Ohio Monthly Record 4-359.

{¶ 14} The agencies rely principally on R.C. 4123.32(D), as interpreted and applied in *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.* (1991), 62 Ohio St.3d 81, 578 N.E.2d 458. They argue that, for the purpose of Ohio Adm.Code 4123-19-03(M), (1) a succeeding employer is "simply a transferee of business in whole or in part," *id.* at 84, 578 N.E.2d at 460; (2) HCF's purchases represent a virtual takeover of Crestview's and Piketon's businesses, and, therefore, (3) HCF is liable for the assessed buy-out payments. We reject this argument for the reasons cited by the court of appeals.

{¶ 15} R.C. 4123.32 gives BWC's administrator authority to administer the State Insurance Fund. As part of his power to collect, maintain, and disburse this fund, R.C. 4123.32(D) authorizes the BWC administrator to adopt rules

establishing "the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance." Division (D) continues:

"[T]he administrator may require that if any employer transfers his business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter."

{¶ 16} The court of appeals correctly found that R.C. 4123.32(D) is an enabling statute and does not independently impose any employer obligation. Instead, former Ohio Adm.Code 4121-7-02(A) through (C) governed "the rate to be applied where one employer takes over the occupation or industry of another." R.C. 4123.32(D). These paragraphs explained the basic (or manual) rate at which a premium is charged and how risk coverage is transferred. Paragraphs (B)(1) through (4), in particular, established how to calculate succeeding employer premiums—a formula that depends on whether the predecessor is paying basic rate premiums or has a merit rating and whether the predecessor is wholly or only partially succeeded in its business.[1]

---

1. Ohio Adm.Code 4123-19-03(M) was amended in February 1993 to incorporate by reference all of Ohio Adm.Code 4121-7-02(B) (now, Ohio Adm.Code 4121-17-02[B]). 1992-1993 Ohio Monthly Record 862; 1993-1994 Ohio Monthly Record 279. Complementing paragraph (B)(1), paragraph (B)(2) provided that when a basic-rate paying employer wholly succeeds one or more basic-rate paying employers, the successor shall pay premiums at the basic rate. Paragraph (B)(3) provided that when an employer having "an established coverage or having had experience in the most recent experience period" wholly succeeds one or more similarly situated employers and at least one of the group is merit-rated, the successor's premium will be based on a combination of all the employers' experience. Paragraph (B)(4) provided that when an employer succeeds only to a portion of the business conducted by one or more employers "having an established coverage or having had experience in the most recent experience period," the successor shall pay premium based on the predecessor's most recent experience period pertaining to the portion of the business acquired.

**{¶ 17}** The agencies urge us to extend Ohio Adm.Code 4121-7-02(B)(1) to HCF, notwithstanding the "not having coverage" clause. They argue that under *Lake Erie, supra*, R.C. 4123.32(D) requires only that HCF be a successor in whole or part. Thus, the rule conflicts with the statute, and the rule must yield. *State ex rel. Kildow v. Indus. Comm.* (1934), 128 Ohio St. 573, 581, 1 O.O. 235, 238, 192 N.E.2d 873, 876 (statutes override administrative rules whenever they conflict, and the commission is not estopped from claiming its conflicting rules invalid). Even assuming HCF's contested succession to Crestview's and Piketon's businesses, this argument does not persuade us that Ohio Adm.Code 4121-7-02(B)(1) required the claimed buy-outs.

**{¶ 18}** First, *Lake Erie* is not controlling here. *Lake Erie* involved a State Fund employer who objected to having its premium based on the poor experience of its State Fund predecessor. The court of appeals in the instant case properly recognized that *Lake Erie* had nothing at all to do with a self-insured employer's objection to a buy-out requirement. Moreover, *Lake Erie* construed R.C. 4123.32(D) as it related to Ohio Adm.Code 4121-7-02(B)(3) and (4), but not (B)(1), which is the only paragraph that contains the "not having coverage" language. *Id.,* 62 Ohio St.3d at 83, 578 N.E. 2d at 460.

**{¶ 19}** Second, BWC and the commission must follow their own rules as written. *State ex rel. Cincinnati v. Ohio Civ. Rights Comm.* (1981), 2 Ohio App.3d 287, 288, 2 OBR 317, 319, 441 N.E.2d 829, 831. They cannot give selective effect to provisions to produce a desired result or otherwise change them without complying with the R.C. Chapter 119 rule-making procedure. *State ex rel. Reider's, Inc. v. Indus. Comm.* (1988), 48 Ohio App.3d 242, 549 N.E.2d 532. Accordingly, the court of appeals justifiably applied the "not having coverage" clause and properly rejected appellants' construction of Ohio Adm.Code 4121-7-02(B)(1).

**{¶ 20}** But our analysis does not end here. HCF must clear a second hurdle: Ohio Adm.Code 4123-19-03(M). That rule requires a buy-out in "cases of a merger by a self-insuring employer and a state fund employer under the self-insurer's status." Thus, the agencies offer an alternative argument: that HCF effectively merged with Crestview and Piketon by purchasing so much of their businesses. They again rely on *Lake Erie, supra*, asserting that Ohio Adm.Code 4123-19-03(M) uses "merger" in a broad sense, not the technical corporate sense applied to determine successor liability. We also reject this argument.

**{¶ 21}** In *Lake Erie*, we refused to apply common-law theories of corporate successor liability to determine when succeeding employers must assume their predecessor's experience rating. And we did not discard those principles arbitrarily. Rather, we reasoned that since R.C. 4123.32(D) itself defined a successor in interest, corporate common law was irrelevant. *Id.,* 62 Ohio St.3d at 83-84, 578 N.E.2d at 461-462. *Lake Erie,* therefore, provides no authority for disregarding a statutory or regulatory definition or for ascribing to a legal term some meaning that resists common understanding.

**{¶ 22}** R.C. 4123.32(D) does not define "merger." Nor do the agencies assert that a statutory merger has occurred under R.C. Chapter 1701. Instead, their argument suggests a de facto merger. A de facto merger is the common-law method of imposing successor liability "without an official declaration" of a merger. *Welco Industries, Inc. v. Applied Cos*. (1993), 67 Ohio St.3d 344, 349, 617 N.E.2d 1129, 1134. *Welco* explained:

"The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from the sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *Id.* at 349, 617 N.E.2d at 1134.

**{¶ 23}** Appellants do not cite evidence to satisfy any of these criteria. HCF continued Crestview's and Piketon's business activity, but it apparently did not retain their corporate directors or officers. Moreover, no evidence establishes an assets-for-stock exchange, arguably the *sine qua non* of a de facto merger. *Welco, supra,* at 349, 617 N.E.2d at 1134. Similarly, no evidence establishes the corporate demise of either Crestview or Piketon. The record reflects only that both corporations were in good standing with the Ohio Secretary of State at least until April 1992, and that Piketon agreed to a noncompetition clause, which implies that Piketon remained in existence. Finally, appellants cite no evidence to prove that HCF assumed any of Crestview's or Piketon's liabilities or obligations. HCF's purchases, therefore, do not represent de facto mergers. See *Lake Erie, supra* (commonality of directors, contractual agreement to retain all employees, and successor profit-sharing plan suggest that State Fund employer's purchase of predecessor's assets was more than a mere cash sale).

**{¶ 24}** The court of appeals correctly found that HCF had no buy-out liability under the succeeding employer definition in Ohio Adm. Code 4121-7-02(B)(1), and appellants have not established a merger for the purpose of Ohio Adm.Code 4123-19-03(M). Accordingly, we affirm and issue the writ of mandamus vacating the Board Subcommittee's order.

*Judgment affirmed*
*and writ issued.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––